**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

Gregory Keith Jones,
Petitioner
-vs-
Charles L. Ryan, et al.,
Respondents.

CV-15-0883-PHX-NVW (JFM)

**Report & Recommendation**
**on Petition for Writ of Habeas Corpus**

## I.    MATTER UNDER CONSIDERATION

Petitioner, presently incarcerated in the Arizona State Prison Complex at Tucson, Arizona, serving nine concurrent life sentences, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 on May 18, 2015 (Doc. 1).  On September 2, 2015 Respondents filed their Response (Doc. 10).   Petitioner filed a Reply on November 23, 2015 (Doc. 14).

The Petitioner's Petition is now ripe for consideration.   Accordingly, the undersigned makes the following proposed findings of fact, report, and recommendation pursuant to Rule 8(b), Rules Governing Section 2254 Cases, Rule 72(b), Federal Rules of Civil Procedure, 28 U.S.C. § 636(b) and Rule 72.2(a)(2), Local Rules of Civil Procedure.

## II.    RELEVANT FACTUAL & PROCEDURAL BACKGROUND
### A.    FACTUAL BACKGROUND

In disposing of Petitioner's direct appeal, the Arizona Court of Appeals summarized the factual background (in the light most favorable to sustain the convictions), as follows:

On January 10, 2008, Scottsdale Police Officer Timothy Edwards contacted Defendant at his home in south Scottsdale ("the

1

Residence") during a "patrol response." Though the home was located in a working or middle class area Edwards observed a Bentley -- which he had never seen in his 15 years working that neighborhood in the garage and "at least a hundred shoe boxes" some of which he confirmed were filled with Nike shoes. When Edwards asked Defendant what he did for a living, he initially replied that he owned Tipps Barbecue, but then stated that his sister owned it and that he was "helping her out." Edwards told Defendant that he had never heard of Tipps Barbecue and when he asked for "some reference," Defendant told him he also did consulting for a Phoenix real estate firm.

After speaking with Defendant, Edwards relayed his observations to his supervisor and eventually to Scottsdale Police Detective Scott Dersa of the narcotics investigations unit. In January 2008, Dersa, along with other officers, began a three-month surveillance of Defendant. During the surveillance, Dersa personally observed Defendant using multiple vehicles to make multiple trips between Tipps Barbecue, the Residence, a condominium at the Cofco Center Court complex ("the Condo"), and a U-Haul storage unit ("the Unit") on east McDowell Road. Based on his observations, Dersa had a motion-activated video camera installed in the public hallway of the U-Haul facility on March 20, 2008. The camera captured Defendant entering the Unit on March 20, 22, 27 and 31, and April 1, 3 and 7.  Still photos generated from the video showed Defendant handling a box containing several white plastic bottles located on a shelf in the Unit and retrieving what appeared to be "blister packs" from another box. On March 27 and 31, Dersa observed Defendant leaving the facility with some shoe boxes from the Unit.

Based on the surveillance information, Dersa drafted and obtained eight search warrants, including warrants for the Unit, Tipps Barbecue, the Residence and the Condo. During the search of the Unit on April 7, 2008, officers found many boxes containing numerous bottles and containers of prescription narcotic drugs, including: 3,000 tablets containing hydrocodone; 100 tablets containing morphine; 100 pills containing oxycodone; 3,300 pills containing hydrocodone; 289 capsules containing morphine; 3500 tablets containing methadone; 2,400 tablets containing alprazolam; 471 tablets containing morphine; 828 milliliters of liquid containing promethazine with codeine and 1 bottle of codeine; 3,300 tablets containing hydromorphine; 500 tablets containing diazepam; 200 tablets containing oxycodone; 100 tablets containing meperidine; 200 tablets containing methylphenidate; 500 tablets containing hydrocodone; 100 tablets containing hydromorphone; 1,200 tablets containing alprazolam; and 13, 964 tablets of alprazolam (contained in jars). All of the various drugs were in usable form, including those in liquid form. In all, the quantity of drugs found at the storage unit amounted to "over 34,600 dosage units" or the equivalent of what would be stocked by a mid-range Fry's Pharmacy. Police also located a briefcase containing "rubber-banded" bills in stacks labeled "1- or 2000" that added up to a total of $40,500; a roll of "large industrial shrink wrap"; and a number of empty shoeboxes.

On April 8, 2008, Scottsdale Police executed a search warrant on the Condo at the Cofco Center Court complex. During surveillance, police had observed Defendant leaving the Condo and locking the front door with a key. The police found a newer model

silver Mercedes-Benz and a newer model white Dodge Magnum that they had seen Defendant use. Inside the Dodge, police found two driver licenses in the name of "Henry Griffin," but bearing Defendant's photograph. Police also found a "money counter" under a bed in one bedroom, "U.S. currency . . . stacked in rubber bands" in a dresser drawer, and the keys to the Mercedes.

When executing the warrant for the Residence, officers found in the garage the Bentley, which was registered to an "LLC in the State of California." And beneath a large box in the garage, they found a large metal plate that concealed a safe in the concrete floor. Inside the safe, there were several shoe boxes containing stacks of U.S. currency totaling approximately $231,000. A wallet containing bank cards bearing Defendant's name, a checkbook bearing Defendant's name on the checks, and the key to the Bentley were also inside the safe. In an attic space above the garage, police located "financial paperwork."

After completing the search of the Residence, Dersa interviewed Defendant, who was already under arrest. Dersa offered to read Defendant his Miranda rights a second time, but Defendant waived them and agreed to speak with him. Defendant initially denied that he sold narcotic drugs, but after being shown the surveillance photographs of him at the storage unit, Defendant told Dersa "to think of him [as] somewhat of a mule" -- that he "move [d] things." Defendant also told Dersa that "guys [came] from all over the country for [the drugs]." When Dersa asked him about the prescription drugs, Defendant said he was "compensated for his role."

Defendant admitted that the contents of the Unit were his and that he rented it under the name "Michael Griffin." Defendant also admitted using the name "Michael Griffin" when co-signing on the lease for the Condo and that he paid cash for the Unit. Defendant claimed ownership of one of the cash-filled shoeboxes found in the safe and identified the box containing $40,000 as one that was "owed to somebody for a quantity ... of drugs that he had received and that quantity was kind of fronted," and that "people would be after that money."

Defendant continued to maintain that he worked at Tipps Barbecue, where he was paid in cash. Defendant told Dersa that he helped his son, a college student in San Diego, "get" the Residence "as a business investment," to help his son improve his credit rating. Defendant denied owning the Bentley parked in the garage at the house, and claimed that it came from California and belonged to a friend who kept it at the Residence. Defendant maintained that the Mercedes he was seen riding in "belonged to somebody locally who could no longer afford to make the payments," therefore he had taken over the payments to help out the registered owner. The Dodge Magnum, which Defendant stated he obtained "from a local car lot," had a temporary registration under the name "Michael Griffin."

(Exhibit XX, Mem. Dec. 12/15/11 at 2-8.0  (Exhibits to the Answer, Doc. 10, are referenced herein as "Exhibit ___.") (*See* Exhibit NNN, Affid. For Search Warrant.)

//

3

## B.     PROCEEDINGS AT TRIAL

**Allegations** - On April 18, 2008, Petitioner was indicted in Maricopa County Superior Court on: Count 1,  possession of narcotic drugs for sale (hydrocodone), a class 2 felony; Count 2, possession of narcotic drugs for sale (codeine), a class 2 felony; Count 3, possession of narcotic drugs for sale (oxycodone), a class 2 felony; Count 4, possession of narcotic drugs for sale (morphine), a class 2 felony; Count 5, possession of dangerous drugs for sale ( diazepam), a class 2 felony; Count 6, possession of dangerous drugs for sale (methylphenidate), a class 2 felony; Count 7, possession of dangerous drugs for sale (alprazolam), a class 2 felony; Count 8, possession of drug paraphernalia, a class 6 felony; Count 9, money laundering in the second degree, a class 3 felony; and Count 10, illegal control of an enterprise, a class 3 felony.  The original Count 1 charged sale or transportation of marijuana over two pounds, a class 2 felony. However, the state dismissed this charge, with Defendant's agreement, before trial and the remaining counts were renumbered accordingly.  (Exhibit AA, M.E. 11/16/09 at 2.)

The state also filed allegations that Petitioner was on release at the time of the offenses (Exhibit E), that the offenses were for pecuniary gain (an aggravating factor) (Exhibit F), and the Petitioner had a historical prior (Exhibit G).

On August 27, 2009, the state also filed a notice alleging that Petitioner was a "Serious Drug Offender" pursuant to Ariz. Rev. Stat. § 13-3410 (Exhibit S), thereby raising Petitioner's sentencing exposure to life in prison.

**Settlement Conferences** – Petitioner appeared on November 18, 2008 for a settlement conference.  The state offered a plea to one Class 2 felony, with a minimum term ("slightly aggravated") of 7 years, in exchange for dismissal of remaining counts, and allegations, including the prior convictions and probation status.  (Exhibit I, R.T. 11/18/08 at 11.)  The defense responded that the offer had not moved from a prior offer, even after Petitioner had been of assistance to the prosecution.  (*Id.* at 13-14.)  The defense argued for a sentencing cap of 7 years, rather than a minimum.  (*Id.* at 18.) Based in part on suggestions from the court that a presumptive sentence was likely, the

state proposed to remove any stipulation on sentencing, coupled with a consecutive term of probation on another Class 2 offense, but declined to make a formal offer.  (*Id.* at 19, 25.)  The conference was concluded without resolution.  (*Id.* at 25-26.)

At the outset of trial, after *voir dire*, trial counsel requested a hearing with the trial court to review Petitioner's potential sentencing at trial. The trial court indicated the purpose would be limited to reviewing potential sentencing, and would not include discussion of the facts of the case.  The trial court indicated both sides would need to waive any potential conflict.  The state indicated it was unprepared to negotiate a plea agreement, but agreed to waive the conflict.  Defense counsel also agreed, but Petitioner refused.   The hearing was terminated.  (Exhibit DD, R.T. 11/12/09 at 108-112.)

**Motions to Suppress** - On August 6, 2008, trial counsel moved to suppress portions of the custodial interview on the basis that Petitioner invoked his right to counsel.  (Exhibit D.)

Trial counsel also moved to suppress the evidence obtained under the search warrant on the basis that the surveillance video was a violation of Petitioner's right to privacy, and because the search warrant application contained misrepresentations about the police observing drugs in boxes exchanged by Petitioner with a Mississippi buyer, Mario Jones (no relation).  (Exhibit J.)  Trial counsel indicated an intent to supplement the motion with additional information (Exhibit N, R.T. 5/4/9 at 5), and filed a Discovery Request (Exhibit M) seeking *inter alia* FBI and DEA reports on the alleged exchange, which the court granted.  Petitioner did not supplement his motion, and on June 8, 2009, the court denied the motion to suppress and vacated the scheduled suppression hearing. (Exhibit XX, Mem. Dec. 12/15/11 at 11.)

**Motions to Withdraw** – Retained trial counsel (Mr. Simpson) filed on August 7, 2009 a Motion to Withdraw (Exhibit MMM), citing potential violations of the ethical rules and discharge by Petitioner.  The prosecution opposed the motion because the matter was on the eve of trial.  Petitioner spoke in favor of the motion, arguing that Petitioner believed the court had wrongly rejected his motion in limine, and that he

wished to represent himself.   The Court advised Petitioner that he would not be permitted to re-litigate the case, and gave Petitioner time to discuss the matter with counsel.  Petitioner persisted in his request, and retained counsel's motion to withdraw was granted, and substitute counsel was appointed.  (Exhibit Q, R.T. 8/10/9; Exhibit Z, M.E. 8/10/09.)

On September 30, 2009, appointed counsel (Mr. Acosta) filed a Motion to Withdraw (Exhibit T), citing as cause disputes with Petitioner over the handling of the case resulting in a breakdown in communication. The court denied the motion.  (Exhibit Z, M.E. 10/1/9; Exhibit V, R.T. 11/2/9 at 5; Exhibit XX, Mem. Dec. 12/15/11 at 12.) Counsel also filed a Motion to Continue (Exhibit U) citing as cause the time required to complete preparations for trial, which was denied.  (Exhibit Z, M.E. 11/2/9; Exhibit V, R.T. 11/2/9 at 8.)

**Trial** – Petitioner proceeded to a jury trial on November 12, 2009.  (Exhibit AA, M.E. 11/12/9.)  Petitioner was found guilty on all charges, although with regard to Counts 2 (codeine) and 6 (methylphenidate) the jury found that the state had not proven that the amount equaled or exceeded the statutory amounts.  (Exhibit XX, Mem.Dec. 12/15/11 at 14; Exhibit LL, Verdicts.)

Defendant filed a Motion to Vacate Judgment (Exhibit RR), which the trial court treated as a motion for new trial and denied. (Exhibit XX, Mem. Dec. 12/15/11 at 14.)

On January 8, 2010, the trial court sentenced Defendant to concurrent terms of life in prison on each of Counts 1 through 7, 9 and 10, and to a concurrent, presumptive term of one year in prison on Count 8.  (*Id.* at 14; Exhibit UU, Sentence.)

## C.   PROCEEDINGS ON DIRECT APPEAL

Petitioner filed through appointed counsel (Mr. Lucero), a direct appeal, arguing: (1) error in failing to conduct an evidentiary hearing on the motion to suppress based on the misrepresentations in obtaining the search warrant; (2) error in denying the motion to continue after the state filed the allegation of Serious Drug Offender ("SDO"); and (3)

there was insufficient evidence to support the SDO allegation.   (Exhibit VV, Opening Brief.)

The Arizona Court of Appeals rejected Petitioner's arguments and affirmed his convictions and sentences.  (Exhibit XX, Mem. Dec. 12/15/11.)

Petitioner did not seek further direct review.  (Petition, Doc. 1 at 3.)

## D.   PROCEEDINGS ON POST-CONVICTION RELIEF

Petitioner then filed a Notice of Post-Conviction Relief (Exhibit YY.)  Counsel was appointed.  (Exhibit ZZ, M.E. 4/9/12.)  On June 4, 2012, before counsel filed a petition or notice of completion of review, Petitioner filed a *Pro Per* Petition for Post-Conviction Relief (Exhibit AAA).

On July 18, 2012, counsel filed a Notice of Completion (Exhibit BBB) evidencing an inability to find a tenable issue to raise in a supplemental petition, and sought leave for Petitioner to file one *pro per*.  On August 15, 2012, Petitioner filed his amended *Pro Per*  Petition for Post-Conviction Relief (Exhibit CCC), raising the following four claims:

1.  violation of Petitioner's right to privacy under the Fourth Amendment by the use of the surveillance video;

2.  violation of state rules and due process when the prosecution failed to disclose  prosecution witness Officer Edwards;

3. error in failing to rule on Petitioner's motion in limine regarding the investigation regarding the dismissed Count 1, resulting in the admission of unfairly prejudicial evidence; and

4.  ineffective assistance of appointed trial counsel (Mr. Acosta) and appellate counsel (Mr. Lucero), in a variety of ways.

The PCR court denied the first three claims because Petitioner "raised, or could have raised, the exact issues on appeal."  (Exhibit FFF, M.E. 12/19/12 at 2.)  The PCR court denied the ineffective assistance claims as without merit.  (*Id.* at 3-4.)

Although the PCR court's Minute Entry was not filed until January 14, 2013 (*See* Exhibit JJJ, Docket at Item 206; Exhibit HHH, Mem. Dec. 9/4/14 at n. 1), on December 31, 2012, Petitioner filed with the Arizona Supreme Court a Petition for Review (Exhibit GGG), arguing that: (1) the PCR court erred in denying his PCR Petition: (2) his rights to privacy were violated by admission of the surveillance video; (3) violations of state law and *Brady* from failure to disclose prosecution witness Edwards; and (4) the PCR court erred in failing to hold an evidentiary hearing on his claims of ineffective assistance of counsel.

On April 1, 2013, the Arizona Supreme Court declined jurisdiction over the petition and transferred the matter to the Arizona Court of Appeals, who in light of the convoluted procedural history elected "to treat Jones's 'Petition for Review and Ruling as a petition for review of the trial court's denial of his PCR." (Exhibit HHH, Mem. Dec. 9/4/14 at n. 1.)

On September 3, 2014, the Arizona Court of Appeals issued its Memorandum Decision (Exhibit HHH), granting review but denying relief.  The court denied the right to privacy and disclosure claims "because Jones could have raised them on direct appeal." (*Id.* at ¶ 3.)  The court rejected the ineffective assistance claims on the merits. (*Id.* at ¶¶ 4-11.)

Petitioner then sought review by the Arizona Supreme Court. (Petition, Doc. 1 at 24, *et seq.*, Petition for Review).  That court summarily denied review. (Exhibit III, Order 3/2/15.)


**E.**     **PRESENT FEDERAL HABEAS PROCEEDINGS**

**Petition** - Petitioner commenced the current case by filing his Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 on May 18, 2015 (Doc. 1).  As determined in the Court's service order, Petitioner's Petition asserts the following four grounds for relief:

(1)  Petitioner  was  convicted  with  evidence  obtained  in

8

violation of the Fourth Amendment; the Arizona Court of Appeals erred in applying the plain view doctrine; and the Court of Appeals erred in failing to address the need for an evidentiary hearing;

(2) Petitioner's Fifth, Sixth, and Fourteenth Amendment rights were violated when the state failed to disclose witnesses, and Petitioner's trial counsel was ineffective by failing to object;

(3) Petitioner's trial counsel was ineffective, in violation of the Fifth and Sixth Amendments, when counsel failed to object to a witness's testimony regarding a portion of the investigation that the trial court excluded at the beginning of the trial; and

(4) The Arizona Court of Appeals erred in denying Petitioner's ineffective assistance of counsel claims.

(Order 6/10/15, Doc. 3 at 1-2.)   Broken down by subpart, Petitioner's Petition presents, or Respondents perceive, the following claims and subclaims:

1.  Fourth Amendment Claims:

(a) Privacy claim: Placement of the surveillance cameras was a violation of his privacy rights;

(b) *Franks* Claim:  the search warrant affidavit contained a false statement.

2. Disclosure Claims:

(a) *Brady* claim: the prosecution failed to disclose Officer Edwards as a trial witness;

(b) Ineffectiveness Claim:  trial counsel was ineffective for failing to object to Officer Edwards' testimony.

3. Unfairly Prejudicial Evidence:

(a) Prejudice claim: the court erred by not excluding testimony regarding evidence related to the dismissed Count 1;

(b) Ineffectiveness Claim:  trial counsel was ineffective for failing to object to the prejudicial evidence.

4. Ineffective Assistance of Counsel:  trial or appellate counsel were ineffective:

(a) Advice regarding Plea: trial counsel advised Petitioner he was negotiating a plea agreement;[1]

(b) Failure to Present Defense: trial counsel failed to prepare for trial or

---

[1] Respondents label the seven subparts of Ground 4 as "IAC claim" 1 through 7. For consistency, the undersigned designates them as subparts (a) through (g) of Ground 4.)

present a defense;

(c) Discovery: trial counsel failed to pursue available discovery;

(d) Testimonial Objections: trial counsel failed to object to critical testimony;

(e) Serious Drug Offender Allegation: trial counsel failed for over two months to alert Petitioner to the filing of a serious drug offender allegation;

(f) Privacy Claim: appellate counsel failed to challenge the privacy interest violation;

(g) Appeal on Motion in Limine:  appellate counsel failed to adequately argue the improper denial of the motion in limine.

**Response** - On September 2, 2015, Respondents filed their Response ("Answer") (Doc. 10).  Respondents argue: (1) Ground 1 is a Fourth Amendment exclusionary rule claim not cognizable on habeas review under the *Stone* doctrine (Answer, Doc. 10 at 40, *et seq.*); (2) the privacy claim in Ground 1 was procedurally barred on an independent and adequate state ground (*id.* at 41, *et seq.*); (3) the *Franks* claim in Ground 1 is without merit (*id.* at 44, *et seq.*); (4) both the *Brady* claim and the ineffective assistance claim in Ground 2 were procedurally barred on independent and adequate state grounds (*id.* at 51, *et seq.*);  (5) ineffectiveness of appellate or PCR counsel is not cause to excuse the procedural bar of the ineffectiveness claim in Ground 2 (*id.* at 52 *et seq.*); (6) Ground 3 was either procedurally defaulted because not fairly presented as a federal claim, or procedurally barred on an independent and adequate state ground (*id.* at 58, *et seq.*); (7) ineffectiveness of appellate or PCR counsel is not cause to excuse the procedural bar of the ineffectiveness claim in Ground 3 (*id.* at 59 *et seq.*); (8) the ineffective assistance claims in Grounds 4(a) (advice regarding plea), 4(d) (testimonial objections), and 4(g) (appeal on motion in limine) are procedurally defaulted, and are not "substantial" under *Martinez* (*id.* at 68 *et seq.*); (9) the ineffective assistance claim in Ground 4(b) (failure to present a defense) is without merit (*id.* at 69, *et seq.*); (10) the ineffective assistance claim in Ground 4(c) (discovery) is without merit (*id.* at 71, *et seq.*); (11) the ineffective

assistance claim in Ground 4(e) (serious drug offender allegation) is without merit (*id.* at 72, *et seq.*); and (12) the ineffective assistance claim in Ground 4(f) (privacy claim) is without merit (*id.* at 74, *et seq.*).

**Reply** - On November 23, 2015, Petitioner filed a Reply (Doc. 14).  Petitioner argues: (1) he fairly presented his claims of ineffective assistance of PCR counsel (*id.* at 2, *et seq.*); (2) and he had a constitutional right to effective PCR counsel (*id.* at 5, *et seq.*); (3) the ineffectiveness of PCR counsel excuses his procedural defaults (*id.* at 11, *et seq.*); (4) 28 U.S.C. § 2254(i) does not prevent relying on ineffectiveness of PCR counsel to excuse the procedural default of Petitioner's claims (*id.* at 14 *et seq.*); (5) Petitioner's failure to raise his ineffective assistance claims by failing to raise them on PCR did not result in procedural default (*id.* at 17, *et seq.*); (6) Arizona's waiver bar is an inadequate bar because it frustrates the exercise of a federal right (*id.* at 25, *et seq.*); (7) Petitioner is entitled to a stay to exhaust state remedies (*id.* at 26, *et seq.*); (8) PCR counsel's ineffectiveness resulted in Petitioner's procedural defaults (*id.* at 35, *et seq.*); and (9) Petitioner's claims regarding plea negotiations are meritorious (*id.* at 40, et seq.).

## III.    APPLICATION OF LAW TO FACTS

### A.    EXHAUSTION, PROCEDURAL DEFAULT AND PROCEDURAL BAR

Respondents argue that most of Petitioner's claims are either procedurally defaulted or were procedurally barred on an independent and adequate state ground, and thus are barred from federal habeas review.

### 1.    Exhaustion Requirement

Generally, a federal court has authority to review a state prisoner's claims only if available state remedies have been exhausted. *Duckworth v. Serrano*, 454 U.S. 1, 3 (1981) (*per curiam*). The exhaustion doctrine, first developed in case law, has been codified at 28 U.S.C. § 2254(b) and (c).  When seeking habeas relief, the burden is on the petitioner to show that he has properly exhausted each claim. *Cartwright v. Cupp*,

650 F.2d 1103, 1104 (9th Cir. 1981)(*per curiam*), *cert. denied*, 455 U.S. 1023 (1982).

Ordinarily, to exhaust his state remedies, the petitioner must have fairly presented his federal claims to the state courts.  "A petitioner fairly and fully presents a claim to the state court for purposes of satisfying the exhaustion requirement if he presents the claim: (1) to the proper forum, (2) through the proper vehicle, and (3) by providing the proper factual and legal basis for the claim."  *Insyxiengmay v. Morgan*, 403 F.3d 657, 668 (9th Cir. 2005).

**Proper Forum** - "In cases not carrying a life sentence or the death penalty, 'claims of Arizona state prisoners are exhausted for purposes of federal habeas once the Arizona Court of Appeals has ruled on them.'" *Castillo v. McFadden*, 399 F.3d 993, 998 (9th Cir. 2005)(quoting *Swoopes v. Sublett*, 196 F.3d 1008, 1010 (9th Cir. 1999)).

Here, Petitioner received numerous life sentences.  It is true that the *Swoopes* decision refers to there being no right of appeal to the Arizona Supreme Court "except in capital cases or when a life sentence is imposed." *Swoopes*, 196 F.3d at 1009.  The decision concludes that "except in habeas petitions in life-sentence or capital cases, claims of Arizona state prisoners are exhausted for purposes of federal habeas once the Arizona Court of Appeals has ruled on them. *Id*. at 1010.

In reaching that decision, however, the Ninth Circuit was faced with a habeas petitioner whose appeal to the Arizona Court of Appeals was denied in 1988, prior to the 1989 amendments eliminating life-sentences from the exceptions to Arizona Court of Appeals jurisdiction. *See State v. Swoopes*, 155 Ariz. 432, 747 P.2d 593 (App. 1988).  Similarly, the Ninth Circuit was required to draw on decisions applying the pre-1989 amendments law.  In *State v. Sandon*, 161 Ariz. 157, 777 P.2d 220 (1989), the Arizona Supreme Court considered the review rights of a defendant whose appeal was denied in 1986.  *Sandon*, 161 Ariz. at 157, 777 P.2d at 220.  Although the *Sandon* court noted the adoption of the 1989 amendments in a footnote, they were not applying that law. *Id*. at 158 n. 1, 777 P.2d at 221 n.1.

Similarly, the decision in *State v. Shattuck*, 140 Ariz. 582, 684 P.2d 154 (1984),

also relied on in *Swoopes*, predated the 1989 amendments.  Indeed, the only Arizona decision relied upon in *Swoopes* and made after the 1989 amendments was *Moreno v. Gonzalez*, 192 Ariz. 131, 962 P.2d 205 (1998).   *Moreno* did not, however rely upon Ariz.Rev.Stat. §§ 12-120.21 or 13-4031, or specifically discuss the death/life sentence limitation.  Rather, *Moreno* focused on the "nature and scope of discretionary review by petition for review,"  *Moreno*, 192 Ariz. at 134, 962 P.2d at 133, and was concerned with whether such discretionary review was an "appeal" within the meaning of the exceptions to Arizona's timeliness bar for claims not presented on "appeal" for good cause.

Moreover, the import of *Sandon* was the Arizona Supreme Court's apparent desire to stop the flood of "large numbers of prisoner petitions seeking to exhaust state remedies."  *Sandon*, 161 Ariz. at 157, 777 P.2d at 220.   The *Sandon* court concluded that "'[o]nce the defendant has been given the appeal to which he has a right, state remedies have been exhausted."  Id. at 158, 777 P.2d at 221, quoting Shattuck, 140 Ariz. at 585, 684 P.2d at 157.  Thus, their recitation of the death/life sentence limitation is not properly read as the limit of their holding, but as a reiteration of the pre-1989 holding of Shattuck.  Thus Sandon may only be reasonably read as an attempt by the Arizona Supreme Court to remove their discretionary review from the cycle of review required for exhaustion of state remedies.  While a given  respondent may desire to require its Arizona prisoner to file a petition for review with the Arizona Supreme Court, it is not the respondents' desire, however, but that of the Arizona court that is controlling.

Finally, *Swoopes* itself did not hinge on any reading of Ariz.Rev.Stat. §§ 12-120.21 or 13-4031 themselves, but upon the question "whether Arizona has identified discretionary Supreme Court review 'as outside the standard review process and has plainly said that it need not be sought for purpose of exhaustion.' "  *Swoopes*, 196 F.3d at 1010, quoting *O'Sullivan v. Boerckel*, 526 U.S. 838, 849 119 S.Ct. 1728, 1735 (1999).  The only basis for identifying that discretionary review as being tied to death/life sentences was the language of *Shattuck* and *Sandon*, and their reliance upon the then applicable pre-1989 versions of Ariz.Rev.Stat. § § 12-120.21 and 13-4031.

Thus, until this issue is resolved by the Ninth Circuit, the Arizona District Courts are faced with either applying the exact language of *Swoopes*, or applying the principle of *Swoopes* to the facts as they exist in this case. The latter holds truer to the function of a trial court in attempting to apply appellate court precedent.

> Using the techniques developed at common law, a court confronted with apparently controlling authority must parse the precedent in light of the facts presented and the rule announced. Insofar as there may be factual differences between the current case and the earlier one, the court must determine whether those differences are material to the application of the rule or allow the precedent to be distinguished on a principled basis.

*Hart v. Massanari*, 266 F.3d 1155, 1172 (9th Cir. 2001).

In *O'Sullivan*, the Supreme Court held that " 'the creation of a discretionary review system does not, without more, make review' in a state supreme court 'unavailable.'" *Swoopes*, 196 F.3d at 1009, quoting *O'Sullivan*, 119 S.Ct. at 1734. The reasoning of *Swoopes* is based upon the determination that the Arizona Supreme Court has instructed that discretionary review by that court is not part of the standard review process in Arizona and that it need not be sought for the purposes of exhaustion, and the Ninth Circuit's conclusion that this instruction is the something "more" referred to in *O'Sullivan*. *Swoopes*, 196 F.3d at 1010.

Under the version of Ariz.Rev.Stat. § 12-120.21 applicable to Petitioner, review by the Arizona Supreme Court is discretionary. Thus, that review is "unavailable" within the meaning of *Swoopes* and *O'Sullivan*, and utilization of that review is not necessary for Petitioner to exhaust his state remedies, despite his life sentence. *See Crowell v. Knowles*, 483 F. Supp. 2d 925 (D. Ariz. 2007) (reaching same conclusion).

**Proper Vehicle** - Ordinarily, "to exhaust one's state court remedies in Arizona, a petitioner must first raise the claim in a direct appeal or collaterally attack his conviction in a petition for post-conviction relief pursuant to Rule 32." *Roettgen v. Copeland*, 33 F.3d 36, 38 (9th Cir. 1994). Only one of these avenues of relief must be exhausted before bringing a habeas petition in federal court. This is true even where alternative avenues of reviewing constitutional issues are still available in state court. *Brown v.*

14

*Easter*, 68 F.3d 1209, 1211 (9th Cir. 1995); *Turner v. Compoy*, 827 F.2d 526, 528 (9th Cir. 1987), *cert. denied*, 489 U.S. 1059 (1989).

**Factual Basis** – A petitioner must have fairly presented the operative facts of his federal claim to the state courts as part of the same claim.  A petitioner may not broaden the scope of a constitutional claim in the federal courts by asserting additional operative facts that have not yet been fairly presented to the state courts.  Expanded claims not presented in the highest state court are not considered in a federal habeas petition. *Brown v. Easter*, 68 F.3d 1209 (9th Cir. 1995); *see also, Pappageorge v. Sumner*, 688 F.2d 1294 (9th Cir. 1982), cert. denied, 459 U.S. 1219 (1983).  And, while new factual allegations do not ordinarily render a claim unexhausted, a petitioner may not "fundamentally alter the legal claim already considered by the state courts." *Vasquez v. Hillery*, 474 U.S. 254, 260 (1986). *See also Chacon v. Wood*, 36 F.3d 1459, 1468 (9th Cir.1994).

**Legal Basis** - Failure to alert the state court to the constitutional nature of the claim will amount to failure to exhaust state remedies.  *Duncan v. Henry*, 513 U.S. 364, 366 (1995).   While the petitioner need not recite "book and verse on the federal constitution," *Picard v. Connor,* 404 U.S. 270, 277-78 (1971) (quoting *Daugherty v. Gladden*, 257 F.2d 750, 758 (9th Cir. 1958)), it is not enough that all the facts necessary to support the federal claim were before the state courts or that a "somewhat similar state law claim was made." *Anderson v. Harless*, 459 U.S. 4, 6 (1982)(*per curiam*).  "[T]he petitioner must make the federal basis of the claim explicit either by specifying particular provisions of the federal Constitution or statutes, or by citing to federal case law," *Insyxiengmay v. Morgan*, 403 F.3d 657, 668 (9th Cir. 2005), or by "a citation to a state case analyzing [the] federal constitutional issue." *Peterson v. Lampert*, 319 F.3d 1153, 1158 (9th Cir. 2003).  But a drive-by-citation of a state case applying federal and state law is not sufficient.

> For a federal issue to be presented by the citation of a state decision dealing with both state and federal issues relevant to the claim, the citation must be accompanied by some clear indication that the case

> involves federal issues. Where, as here, the citation to the state case has no signal in the text of the brief that the petitioner raises federal claims or relies on state law cases that resolve federal issues, the federal claim is not fairly presented.

*Casey v. Moore*, 386 F.3d 896, 912 n. 13  (9th Cir. 2004).

**Mode of Presentation** - "[O]rdinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so." *Baldwin v. Reese*, 541 U.S. 27, 32 (2004).  The Arizona habeas petitioner "must have presented his federal, constitutional issue before the Arizona Court of Appeals within the four corners of his appellate briefing." *Castillo v. McFadden*, 399 F.3d 993, 1000 (9th Cir. 2005).  *But see Insyxiengmay v. Morgan*, 403 F.3d 657, 668-669 (9th Cir. 2005) (arguments set out in appendix attached to petition and incorporated by reference were fairly presented).

## 2.    **Procedural Default**

Ordinarily, unexhausted claims are dismissed without prejudice. *Johnson v. Lewis*, 929 F.2d 460, 463 (9th Cir. 1991).  However, where a petitioner has failed to properly exhaust his available administrative or judicial remedies, and those remedies are now no longer available because of some procedural bar, the petitioner has "procedurally defaulted" and is generally barred from seeking habeas relief.  Dismissal with prejudice of a procedurally defaulted habeas claim is generally proper absent a "miscarriage of justice" which would excuse the default.  *Reed v. Ross*, 468 U.S. 1, 11 (1984).

Respondents argue that Petitioner may no longer present his unexhausted claims to the state courts.  Respondents rely upon Arizona's preclusion bar, set out in Ariz. R. Crim. Proc. 32.2(a) and time limit bar, set out in Ariz. R. Crim. P.  32.4.  (Answer, Doc. 10 at 19, n. 17.)

**Remedies by Direct Appeal** - Under Ariz.R.Crim.P. 31.3, the time for filing a direct appeal expires twenty days after entry of the judgment and sentence. Moreover, no provision is made for a successive direct appeal.  Accordingly, direct appeal is no longer

available for review of Petitioner's unexhausted claims.

**Remedies by Post-Conviction Relief** – Under Arizona's preclusion, waiver and timeliness bars, Petitioner can no longer seek review by a subsequent PCR Petition.

Preclusion Bar – Under the rules applicable to Arizona's post-conviction process, a claim may not be brought in a petition for post-conviction relief if the claim was "[f]inally adjudicated on the merits on appeal or in any previous collateral proceeding." Ariz. R. Crim. P. 32.2(a)(2).

Waiver Bar - Under the rules applicable to Arizona's post-conviction process, a claim may not ordinarily be brought in a petition for post-conviction relief that "has been waived at trial, on appeal, or in any previous collateral proceeding." Ariz.R.Crim.P. 32.2(a)(3). Under this rule, some claims may be deemed waived if the State simply shows "that the defendant did not raise the error at trial, on appeal, or in a previous collateral proceeding." *Stewart v. Smith*, 202 Ariz. 446, 449, 46 P.3d 1067, 1070 (2002) (quoting Ariz.R.Crim.P. 32.2, Comments). *But see State v. Diaz*, 236 Ariz. 361, 340 P.3d 1069 (2014) (failure of PCR counsel, without fault by petitioner, to file timely petition in prior PCR proceedings did not amount to waiver of claims of ineffective assistance of trial counsel).

For others of "sufficient constitutional magnitude," the State "must show that the defendant personally, "knowingly, voluntarily and intelligently' [did] not raise' the ground or denial of a right." *Id.* That requirement is limited to those constitutional rights "that can only be waived by a defendant personally." *State v. Swoopes*, 216 Ariz. 390, 399, 166 P.3d 945, 954 (App.Div. 2, 2007). Indeed, in coming to its prescription in *Stewart v. Smith*, the Arizona Supreme Court identified: (1) waiver of the right to counsel, (2) waiver of the right to a jury trial, and (3) waiver of the right to a twelve-person jury under the Arizona Constitution, as among those rights which require a personal waiver. 202 Ariz. at 450, 46 P.3d at 1071. Claims based upon ineffective assistance of counsel are determined by looking at "the nature of the right allegedly affected by counsel's ineffective performance. *Id.*

Here, none of Petitioner's claims are of the sort requiring a personal waiver, and Petitioner's claims of ineffective assistance similarly have at their core the kinds of claims not within the types identified as requiring a personal waiver.

Timeliness Bar - Even if not barred by preclusion, Petitioner would now be barred from raising his claims by Arizona's time bars.  Ariz.R.Crim.P. 32.4 requires that petitions for post-conviction relief (other than those which are "of-right") be filed "within ninety days after the entry of judgment and sentence or within thirty days after the issuance of the order and mandate in the direct appeal, whichever is the later."  *See State v. Pruett*, 185 Ariz. 128, 912 P.2d 1357 (App. 1995) (applying 32.4 to successive petition, and noting that first petition of pleading defendant deemed direct appeal for purposes of the rule).   That time has long since passed.

Exceptions - Rules 32.2 and  32.4(a) do not bar dilatory claims if they fall within the category of claims specified in Ariz.R.Crim.P. 32.1(d) through (h).  See Ariz. R. Crim. P.  32.2(b) (exceptions to preclusion bar); Ariz. R. Crim. P.  32.4(a) (exceptions to timeliness bar).  Petitioner has not asserted that any of these exceptions are applicable to his claims.   Nor does it appears that such exceptions would apply.  The rule defines the excepted claims as follows:

> d. The person is being held in custody after the sentence imposed has expired;
> e. Newly discovered material facts probably exist and such facts probably would have changed the verdict or sentence. Newly discovered material facts exist if:
> (1) The newly discovered material facts were discovered after the trial.
> (2) The defendant exercised due diligence in securing the newly discovered material facts.
> (3) The newly discovered material facts are not merely cumulative or used solely for impeachment, unless the impeachment evidence substantially undermines testimony which was of critical significance at trial such that the evidence probably would have changed the verdict or sentence.
> f. The defendant's failure to file a notice of post-conviction relief of-right or notice of appeal within the prescribed time was without fault on the defendant's part; or
> g. There has been a significant change in the law that if determined to apply to defendant's case would probably overturn the defendant's conviction or sentence; or
> h. The defendant demonstrates by clear and convincing

evidence that the facts underlying the claim would be sufficient to establish that no reasonable fact-finder would have found defendant guilty of the underlying offense beyond a reasonable doubt, or that the court would not have imposed the death penalty.

Ariz.R.Crim.P. 32.1.

Paragraph 32.1 (d) (expired sentence) generally has no application to an Arizona prisoner who is simply attacking the validity of his conviction or sentence. Where a claim is based on "newly discovered evidence" that has previously been presented to the state courts, the evidence is no longer "newly discovered" and paragraph (e) has no application. Here, Petitioner has long ago asserted the facts underlying his claims. Paragraph (f) has no application where the petitioner filed a timely notice of post-conviction relief. Paragraph (g) has no application because Petitioner has not asserted a change in the law since his last PCR proceeding. Finally, paragraph (h), concerning claims of actual innocence, has no application to the procedural claims Petitioner asserts in this proceeding.

Therefore, none of the exceptions apply, and Arizona's time and waiver bars would prevent Petitioner from returning to state court. Thus, Petitioner's claims that were not fairly presented are all now procedurally defaulted.

**3.**     **Procedural Bar on Independent and Adequate State Grounds**

Related to the concept of procedural default is the principle of barring claims actually disposed of by the state courts on state grounds. "[A]bsent showings of 'cause' and 'prejudice,' federal habeas relief will be unavailable when (1) 'a state court [has] declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement,' and (2) 'the state judgment rests on independent and adequate state procedural grounds.' " *Walker v. Martin,* 562 U.S. 307, 316 (2011).

In *Bennett v. Mueller*, 322 F.3d 573 (9th Cir.2003), the Ninth Circuit addressed the burden of proving the independence and adequacy of a state procedural bar.

Once the state has adequately pled the existence of an independent and adequate state procedural ground as an affirmative defense, the burden to place that defense in issue shifts to the petitioner. The

> petitioner may satisfy this burden by asserting specific factual allegations that demonstrate the inadequacy of the state procedure, including citation to authority demonstrating inconsistent application of the rule. Once having done so, however, the ultimate burden is the state's.

*Id*. at 584-585.

### 4. Inadequacy of State Waiver Bar Applied to Ineffective Assistance Claims

Here, Petitioner argues that Arizona's waiver rules are inadequate to bar federal habeas review, citing *Hoffman v. Arave*, 236 F .3d 523, 531, *cert. denied*, 534 U.S. 944 (2001), because they frustrate the exercise of the federal rights to effective assistance of PCR counsel with regard to the ineffective assistance of trial and appellate counsel. (Reply, Doc. 14 at 25-26.)

In *Hoffman*, the Ninth Circuit observed: "The unique difficulties involved in arguing claims of ineffective assistance of counsel have led federal habeas courts to find 'inadequate' a state procedural bar that denies a petitioner 'any meaningful review of his ineffective assistance claim.'" *Id*. at 531 (quoting *Brecheen v. Reynolds*, 41 F.3d 1343, 1364 (10th Cir.1994)). Those concerns arise in situations such as where the claim was required to be raised on direct appeal, and there was no provision for independent appellate counsel and appellate claims were limited to the existing record. *See e.g. Brecheen, supra.* The concerns have also arisen where a state rule required challenges to the grand jury composition be raised before an indictment was returned, and the defendant had no notice of the proceedings or right to counsel. *See Reece v. Georgia*, 350 U.S. 85, 89 (1955).

In *Hoffman*, the frustrating state rule was one which required all claims in death penalty cases to be raised within 42 days of entry of judgment in a single petition for review, and extended to claims of ineffective assistance of trial counsel, even if trial counsel continued to represent the defendant on review. 236 F.3d at 532, *et seq.*

Petitioner's complaint is based upon his reference to Respondents arguments that any claims of ineffective assistance not previously raised are now waived under Arizona

law, and thus procedurally defaulted.  Petitioner argues that if the ineffectiveness of PCR counsel is not a basis to avoid the procedural default, then the waiver bar frustrates the presentation of his ineffective assistance claims and thus is inadequate to bar habeas review.

However, Petitioner mistakenly focuses on his reading that Respondents argue that his claims of ineffective assistance were waived by failure to present them on direct appeal, referencing the Answer at 51:26-27 and 52:5-8.  (Reply, Doc. 14 at 25.)   The referenced portions do not identify the specific proceeding in which Respondents contend that the ineffective assistance claim in Ground 2 being discussed was procedurally defaulted.  But the plain import of the remainder of the Answer is that the procedural default occurred in the PCR proceeding, not on direct appeal.  Requiring Petitioner to present his ineffective assistance claims in his PCR proceeding did not frustrate his ability to seek review.  Petitioner had substantial time to develop a record on any such claims, and had appointed counsel available to him to research and argue those claims.  Thus, the concerns it addressed in *Hoffman* are not present.

Petitioner does go on to argue that his PCR counsel was ineffective, and that would constitute cause to excuse his procedural default.  (Reply, Doc. 14 at 25.)  But that confuses the cause and prejudice exception to the procedural default rule with the adequacy of the state rule.  Perhaps, if Arizona denied Petitioner PCR counsel to raise his claims of ineffective assistance, then its waiver rule would frustrate review of his federal rights and thus not bar habeas review.  But Petitioner was provided PCR counsel.  Thus, his dispute is not with the adequacy of Arizona's procedural rules, but with the adequacy of his PCR counsel.  That issue relates to cause and prejudice, not to the adequacy of the state procedural bar.

### 4.   **Application to Petitioner's Claims**

Respondents argue that: (1) Grounds 1(a), 2(a), and 2(b) were procedurally barred on independent and adequate state grounds; (2) that Grounds 4(a), 4(d) and 4(g) were not

fairly presented and are now procedurally defaulted; and (3) that Grounds 3(a) and 3(b) were either procedurally barred or were not fairly presented and are now procedurally defaulted. (Respondents address Grounds 1(b) 4(b), 4(c), 4(e), and 4(f) only on the merits.)

### a)   Ground 1(a) (Privacy)

In Ground 1(a) of his Petition, Petitioner argues that the placement of the surveillance cameras at the storage facility was a violation of his privacy rights. Petitioner argues this claim was raised on direct appeal and in his first PCR petition. (Petition, Doc. 1 at 6.)   Respondents agree the privacy claim in Ground 1 was presented to the Arizona Court of Appeals on PCR review, but argue it was procedurally barred on an independent and adequate state ground. (Answer, Doc. 10, at 41, *et seq.*)

This claim was not presented on direct appeal. Although Petitioner raised his claim in Ground 1(b) (regarding the *Franks* issue) in his first issue on direct appeal (Exhibit VV, Opening Brief at 20, *et seq.*), he did not raise the privacy issue.

The claim was raised to the Arizona Court of Appeals in section 3(B) of Petitioner's Petition for Review in his PCR proceeding.  (Exhibit GGG, PFR at 6.) However, the Arizona Court of Appeals disposed of this claim by finding it waived under Ariz. R. Crim. Proc. 32.2(a) "because Jones could have raised them on direct appeal."  (Exhibit HHH, Mem. Dec. 9/4/14 at ¶ 3.)

Other than his argument regarding the frustration of review of federal rights disposed of hereinabove, Petitioner fails to proffer anything to suggest that Rule 32.2(a) is not an independent and adequate state ground, sufficient to bar federal habeas review of claims a defendant could have but did not raise on direct appeal.  The federal courts have routinely held that it is. "Arizona's waiver rules are independent and adequate bases for denying relief." *Hurles v. Ryan*, 752 F.3d 768, 780 (9th Cir.) *cert. denied*, 135 S. Ct. 710 (2014).  *See also Stewart v. Smith*, 536 U.S. 856, 861 (2002) (Arizona's waiver rule is independent of federal law); and *Ortiz v. Stewart*, 149 F.3d 923, 932 (9th Cir. 1998)

(adequate because consistently and regularly applied).   Accordingly, the undersigned concludes that Ground 1(a) was procedurally barred on an independent and adequate state ground.

### b)      Ground 2(a) (*Brady* Claim)

In Ground 2(a), Petitioner argues that the prosecution failed to disclose Officer Edwards as a trial witness, in violation of *Brady v. Maryland*, 373 U.S. 83, 87 (1963), and alleges that, although appellate counsel failed to present the claim on direct appeal, he presented this issue in his PCR proceeding.  (Petition, Doc. 1 at 7.)  Respondents concede that the claim was raised to the Arizona Court of Appeals in Petitioner's PCR proceeding, but assert that (like Ground 1(a)), it was procedurally barred on independent and adequate state grounds (Answer, Doc. 10 at 51, *et seq.*).

Indeed, this claim was presented to the Arizona Court of Appeals in Claim 3(C) in Petitioner's Petition for Review (Exhibit GGG at 7, *et seq.*).   As with Ground 1(a), however, the Arizona Court of Appeals disposed of this claim by finding it waived under Ariz. R. Crim. Proc. 32.2(a) "because Jones could have raised them on direct appeal." (Exhibit HHH, Mem. Dec. 9/4/14 at ¶ 3.)  ).   Accordingly, the undersigned concludes that Ground 2(a) was procedurally barred on an independent and adequate state ground.

### c)      Ground 2(b) (Ineffectiveness re *Brady* Claim)

In Ground 2(b), Petitioner argues that trial counsel was ineffective for failing to object to Officer Edwards' testimony.  Again, he asserts this claim was raised in his PCR proceeding.  (Petition, Doc. 1 at 7.)   Respondents argue that although Petitioner asserted ineffective assistance claims regarding counsel's cross-examination of Edwards, he presented no claim that counsel was ineffective for failing to raise a *Brady* objection, and that Petitioner has now procedurally defaulted on this claim.  (Answer, Doc. 10 at 51, *et seq.*)

As discussed above, Petitioner did raise the underlying *Brady* claim in his PCR

petition for review (although it was procedurally barred).   "While [the ineffective assistance and underlying constitutional claim are] admittedly related, they are distinct claims with separate elements of proof, and each claim should have been separately and specifically presented to the state courts."   *Rose v. Palmateer*, 395 F.3d 1108, 1112 (9th Cir. 2005).

In Claim IV of his PCR petition, Petitioner asserted a claim of ineffective assistance of counsel.  (Exhibit CCC at 16, *et seq.*)   However, the only reference to Officer Edwards was Petitioner's allegation that counsel "was not adequately prepared to cross-examine" him.  (*Id.* at 20.)  In his Petition for Review, he again argued ineffective assistance of counsel under the Sixth Amendment, but he did not assert any facts in support of the claim.  (Exhibit GGG, Pet. Rev. at 9-10.)  He did, however, append his PCR petition.  (*Id.* at Exhibit D, PCR Pet.)  The Arizona Court of Appeals apparently looked through to the appended PCR petition to identify a series of claims.  However, the Court made no reference to Officer Edwards, and did not actually consider a claim that counsel was ineffective for failing to object to Edwards' testimony under *Brady*. (Exhibit HHH, Mem. Dec. 9/4/14.)   Ineffective assistance claims are not fungible, but must each be specifically argued.  *See Pappageorge v. Sumner*, 688 F.2d 1294, 1295 (9th Cir. 1982) (presentation of "additional facts of attorney incompetence" transformed claim into one not presented to state court); and *Carriger v. Lewis*, 971 F.2d 329, 333-34 (9th Cir. 1992) (rejecting argument that presentation of any claim of ineffectiveness results in fair presentation of all claims of ineffective assistance).  *Cf. Hemmerle v. Schriro*, 495 F.3d 1069, 1075 (9th Cir. 2007)  (observing in the course of determining whether to apply "gap tolling" to successive state petitions purported on the same claims that "ineffective assistance claims are not fungible, but are instead highly fact-dependent").

Thus, the undersigned finds that Petitioner did not fairly present to the Arizona Court of Appeals his claim in Ground 2(b), and the claim was not actually considered by that court.  Therefore, this claim was not properly exhausted.

For the reasons discussed hereinabove, the undersigned also concludes that Petitioner has now procedurally defaulted on this claim

### d)       Ground 3(a) (Prejudicial Evidence on Dismissed Count)

In Ground 3(a), Petitioner argues that his due process rights were violated when unfairly prejudicial other act evidence regarding the dismissed Count 1 (relating to the alleged sale of marijuana on January 14, 2008) was admitted.  Petitioner alleges this claim was presented in his PCR proceeding.  (Petition, Doc. 1 at 8.)  Respondents argue that this claim was either procedurally defaulted because not fairly presented as a federal claim, or procedurally barred on an independent and adequate state ground (*id.* at 58, *et seq.*).

In Claim III of his *pro per* PCR petition, Petitioner argued that trial counsel had filed a motion in limine to preclude evidence on the January 14, 2008 conduct, and despite dismissing the count, the trial court failed to rule on the motion.  (Exhibit CCC at 13, *et seq.*)  While Petitioner raised the claim primarily under Arizona Rule of Evidence 403, and related state authorities, he also argued that allowing the admission to pass without correction was a "violation of the Fourteenth Amendment." (*Id.* at 15.)  He also cited *U.S. v. Kennedy,* 564 F.2d 1329 (9th Cir. 1977) and *U.S. v. Muhammad*, 478 F.3d 247 (4th Cir. 2007).  However, these two cases only relate to applying standards from finding prejudice in procedural challenges in federal prosecutions.  Nonetheless, the undersigned finds that Petitioner's description of the unfairly prejudicial nature of the evidence coupled with his reference to the Fourteenth Amendment was sufficient to fairly present a constitutional claim of unfair prejudice from other acts evidence.

The PCR court disposed of this claim, along with his other non-ineffectiveness claims, by concluding that they were precluded because "the Defendant raised, or could have raised, the exact issues on appeal."  (Exhibit FFF, M.E. 12/19/12 at 2.)

Petitioner did not repeat this claim to the Arizona Court of Appeals.  Respondents contend that the Arizona Court of Appeals nonetheless disposed of the claim as waived

by failure to raise it on direct appeal. (Answer, Doc. 10 at 59.) However, the cited paragraph 3 in the appellate court's decision did not identify the claim in Ground 3(a) (and it was not raised to them by Petitioner). In a footnote, the appellate court did reference the related argument, and concluded that it too was waived by failure to raise it on direct appeal. (Exhibit HHH, Mem. Dec. 9/4/14 at ¶ 3 n. 3.) However, in so doing the appellate court did not reference the due process claim, but instead defined the claim as asserting "the trial court erred by failing to rule on his motion(s) in limine." (*Id.*) Thus, the Arizona Court of Appeals did not rule on the due process argument raised in Ground 3(a), but only the state law argument regarding the trial court's obligation to rule on the motion in limine.

Looking only to Petitioner's obligation to fairly present his claims to the Arizona Court of Appeals, the undersigned would find the claim was not fairly presented and thus is now unexhausted and procedurally defaulted.

However, Respondents suggest that this Court should ignore the failure to present the claim to the Arizona Court of Appeals and instead rely upon the PCR court's pronouncement that the claim was precluded.[2] However, the PCR court's pronouncement was ambiguous on the nature of the bar invoked, concluding without designation that the claims were raised or could have been raised on direct appeal. Of course, if the claim was raised on direct appeal then Petitioner exhausted his state remedies.

A finding of preclusion, i.e. that the claims have been raised before, "does not provide a basis for federal courts to apply a procedural bar." *Ceja v. Stewart*, 97 F.3d 1246, 1253 (9th Cir. 1996). Where an Arizona Court asserts both conditions apply to a group of claims without delineating which applied to which, it "did not clearly base its

---

[2] The Arizona courts often reference both its waiver bar (e.g. that the claims were not raised earlier, when they could have been) and its preclusion bar (i.e. that the claims actually were raised earlier and adjudicated on the merits) as resulting in the claims being "precluded". This likely results from the pronouncement in Arizona Rule of Criminal Procedure 32.2(a) that with both types, the "defendant shall be precluded from relief under this rule."

decision on independent and adequate state law grounds." *Id. See also Calderon v. U.S. Dist. Court for Eastern Dist. of California* (Bean), 96 F.3d 1126, 1131 (9th Cir. (Cal.) 1996); *Valerio v. Crawford*, 306 F.3d 742, 774-75 (9th Cir. (Nev.) 2002) ("By failing to specify which claims were barred for which reasons, the Nevada Supreme Court 'did not clearly and expressly rely on an independent and adequate state ground.'"); and *Koerner v. Grigas*, 328 F.3d 1039, 1053 (9th Cir. (Nev.) 2003). To avoid habeas review, a state court decision must "clearly and expressly rely on an independent and adequate state ground." *Coleman v. Thompson*, 501 U.S. 722, 735 (1991).

It might be argued that this Court should look beyond the pronouncement of the PCR court, to the procedural history, and conclude that the true decision was one that the claim had not been raised, was thereby waived, and thus procedurally barred on that ground. However, in *Cone v. Bell*, 556 U.S. 449 (2009), the Court was faced with a state appellate decision which disposed of a federal claim on the mistaken basis that it had been previously presented. The record reflected that the claim had clearly not been presented or passed on in any prior proceeding. Nonetheless, the Supreme Court held: "When a state court declines to review the merits of a petitioner's claim on the ground that it has done so already, it creates no bar to federal habeas review…When a state court refuses to re-adjudicate a claim on the ground that it has been previously determined, the court's decision does not indicate that the claim has been procedurally defaulted." 556 U.S. at 466-67. The *Cone* Court further rejected the state's request to treat the rejection as a procedural bar based upon the state's waiver rule. "Although we have an independent duty to scrutinize the application of state rules that bar our review of federal claims, we have no concomitant duty to apply state procedural bars where state courts have themselves declined to do so. The Tennessee courts did not hold that Cone waived his *Brady* claim, and we will not second-guess their judgment." 556 U.S. at 468-69.

It might be argued that this Court should nonetheless rely upon the dissent in *Koerner*, wherein Judge Beezer argued that the reference to an "ambiguous" order "should be understood in light of the state court opinion and the record in that case,

rather than looking solely to the face of the state court's opinion." 328 F.3d 1039, 1056 (Beezer, J. dissenting).    However, Judge Beezer's dissent plainly acknowledged the import of the majority decision in *Koerner*:

> Today's opinion holds that a federal court may only look to the state court opinion at issue in determining whether a state court opinion relies on a procedural default. If a state court opinion is ambiguous on its face, today's opinion makes it impossible to find a procedural default because any such state court opinion does not "clearly and expressly rely on an independent and adequate state ground." *Valerio v. Crawford*, 306 F.3d 742, 773 (9th Cir.2002) (citation omitted).

*Koerner*, 328 F.3d at 1056 (Beezer, J. dissenting). Thus the portion of Judge Beezer's dissent on which such an argument would  rely was not a statement of what the law in the Ninth Circuit is, but Judge Beezer's assertion of what it ought to be. *But see McElyea v. Schriro*, 2009 WL 222375, CV-06-0884-PHX-SMM(HCE) (D. Ariz. 2009) (looking beyond state court opinion, based on pre-*Koerner* 9th Circuit cases doing so, citing *Koerner*, but without noting Beezer's dissent). Respondents point to no authority permitting this Court to reject Judge Beezer's analysis of the majority's holding in *Koerner*, nor the effect of that holding.

Here, the decision of the PCR court is ambiguous on its face, proposing two mutually exclusive reasons for disposing of the claim.  According to *Koerner*, this Court is not free to look beyond that ambiguity and attempt to ascertain the true basis for disposing of the claim.

Accordingly, having found that the claim was fairly presented only to the PCR court (and acted upon only by the PCR court), and that the PCR court ambiguously ruled that it was previously presented on direct appeal, this Court must treat it as having been presented, and thus conclude that Petitioner exhausted his state remedies on this claim.


### e)    Ground 3(b) (Ineffectiveness re Evidence on Dismissed Count)

In his Ground 3(b), Petitioner argues that both trial and appellate counsel were ineffective for failing to object to the evidence on the dismissed count as being unfairly

prejudicial.  (Petition, Doc. 1 at 8.)    The Court's service order identified only a claim that related to the effectiveness of trial counsel.  (*See* Service Order 6/10/15, Doc. 3 at 3.)  However, the plain language of the Petition is that "counsel was ineffective ….[for] failing to raise this issue on direct appeal."  (Petition, Doc. 1 at 8.)  He further references the purported decision of the Arizona Court of Appeals on PCR review that "Petitioner fail to raise this claim in his direct appeal." (*Id.*)  Because it does not affect the outcome, the undersigned will treat this claim as relating to both the ineffectiveness of trial counsel and the ineffectiveness of appellate counsel.

Respondents do not separately address this claim as part of Ground 3.  Instead, they consider Petitioner's allegations of ineffective assistance of appellate counsel in failing to raise the claim only as a basis for cause to excuse the purported procedural default or procedural bar of Ground 3(a).  (Answer, Doc. 10 at 59.)

Petitioner asserts he raised Ground 3 in his PCR proceeding.  As noted with regard to Ground 2(b) (ineffectiveness re *Brady* claim), Petitioner's Petition for Review did not provide any facts to the Arizona Court of Appeals.  (Exhibit GGG, Pet. Rev. at 9-10.)  He did, however, append his PCR petition.  (*Id.* at Exhibit D, PCR Pet.)  The Arizona Court of Appeals apparently looked through to the appended PCR petition to identify a series of claims.  However, the Court made no reference to a failure by trial or appellate counsel with regard to the evidence on the dismissed count. (Exhibit HHH, Mem. Dec. 9/4/14.)

Moreover, Petitioner's PCR petition did not assert that trial counsel was ineffective with regard to evidence on the dismissed count.  (Exhibit CCC, PCR Pet. at 16, *et seq.*)

Petitioner did argue that appellate counsel was ineffective for failing to "seek review of the controlling authority of law to the prejudicial evidence to alleged trials' error."  (*Id.* at 23.)  The only prejudicial evidence argued in the PCR petition related to the evidence on the dismissed count.  Thus, liberally construed, this claim was fairly presented to the PCR court in Petitioner's PCR petition.  In *Insyxiengmay v. Morgan*,

403 F.3d 657, 668-669 (9th Cir. 2005), the Ninth Circuit concluded that arguments set out in an appendix attached to a petition and incorporated by reference were fairly presented.  Here, Petitioner generally asserted his claims of ineffectiveness of trial and PCR counsel, asserted "in [his] Rule 32 P.C.R. Petition Appendix Exhibit 'D', the appellant presented several documents and facts," and argued that he was improperly denied a hearing on these colorable claims by the PCR court.  (Exhibit GGG, Pet. Rev. at 9-10.) The fact that the Arizona Court of Appeals ultimately looked through to this attachment to identify the nature of Petitioner's claims indicates that Petitioner's attachment of his PCR Petition was a fair manner of presenting his claims of ineffective assistance.  Therefore, Petitioner fairly presented this claim regarding appellate counsel.

Thus, the undersigned finds that Petitioner did not fairly present to the Arizona Court of Appeals his claim in Ground 3(b) regarding trial counsel, but did fairly present a claim regarding appellate counsel.

For the reasons discussed hereinabove, the undersigned also concludes that Petitioner has now procedurally defaulted on the unexhausted portion of this claim related to trial counsel.

### f)    Ground 4(a) (Ineffectiveness re Plea Agreement)

In Ground 4(a), Petitioner argues that in August through November, 2009, trial counsel was ineffective in advising Petitioner that he was negotiating a plea agreement, and that the case would not go to trial.  Petitioner asserts that this claim was raised in his PCR proceeding.  (Petition, Doc. 1 at 9.)    Respondents argue this claim was not fairly presented to either the PCR court or the Arizona Court of Appeals, and is now procedurally defaulted, and is not "substantial" under *Martinez*.    (Answer, Doc. 10 at 68 *et seq.*)

Because Petitioner did not allege any facts in support of his ineffective assistance claim in his PCR Petition for Review, any fair presentation would have to come from the attachment of his *pro per* PCR petition to that Petition for Review.   Petitioner did raise

Ground 4(a) in his PCR petition.  At best, Petitioner argued that there was a breakdown in communications with trial counsel, and trial counsel failed to inform Petitioner of the SDO allegations resulting in the rejection of the plea agreement.  (Exhibit CCC, PCR Pet. at 21-22.)  That claim was addressed by the Arizona Court of Appeals.   (Exhibit HHH, Mem. Dec. 9/4/14 at ¶ 9.)  But Petitioner did not argue to the state courts that he was misinformed about whether a plea agreement was being negotiated.

Accordingly, Petitioner failed to fairly present his claim in Ground 4(a), the claim was not properly exhausted, and is now procedurally defaulted.

### g)  Ground 4(d) (Ineffectiveness re Testimonial Objections)

In Ground 4(d), Petitioner argues that trial counsel "failed to object to critical testimony that prejudice[d] the entire trial."  (Petition, Doc. 1 at 9.)  Respondents argue that the claim is devoid of particulars, and that even if liberally construed to relate to the detective's testimony on the dismissed count, the claim is barred because not fairly presented to the Arizona Court of Appeals.  Respondents further argue the claim is not "substantial" under *Martinez*.   (Answer, Doc. 10 at at 68 *et seq.*)

The undersigned agrees.  Even assuming that the claim (which appears conclusory and devoid of any specific allegations, e.g. the witness referred to, the basis for any objections) is sufficiently developed to warrant habeas review, Petitioner presented no similar expansive claim in his PCR petition.  Moreover, if the claim is to be liberally construed as referring to the dispute over testimony regarding the dismissed count, it is a duplicate of the portion of Ground 3(b) relating to trial counsel, and the undersigned has concluded hereinabove that that claim was procedurally defaulted.

Accordingly, whether read as a generic claim or read as referring to the dismissed count testimony, this claim was not fairly presented to the state courts, was not properly exhausted, and is now procedurally defaulted.

//

//

### h)   Ground 4(g) (Ineffectiveness re Appeal on Motion in Limine)

In Ground 4(d), Petitioner argues that appellate counsel failed to adequately argue the improper failure to rule on the motion in limine, especially after the trial court stated that the evidence was irrelevant and dismissed the count.   (Petition, Doc. 1 at 9.) Respondents argue that while the underlying claim was presented to the state courts, this claim of ineffectiveness was not raised, and the claim is now procedurally defaulted, and is not "substantial" under *Martinez*.  (Answer, Doc. 10 at 69 *et seq.*)

Again, looking through Petitioner's PCR Petition for Review to his *pro per* PCR petition, Petitioner failed to fairly present this claim.  Petitioner's claims raised with regard to appellate counsel were limited to counsel's failure to adequately pursue the privacy argument, and failure to object to the introduction of the evidence on the dismissed count.  (Exhibit CCC, PCR Pet. at 22-23.)  The latter is the subject of the appellate counsel portion of Ground 3(b) (which the undersigned finds properly exhausted), and thus any portion of Ground 4(g) read to assert the same claim would be duplicative.  Petitioner did not, however, argue that appellate counsel was ineffective for failing to raise a claimed based simply on the trial court's failure to rule on the motion in limine.

According, this claim was not fairly presented, thus not properly exhausted, and is now procedurally defaulted.

### i)   Summary Re Exhaustion

Based upon the foregoing, the undersigned concludes that Petitioner **properly exhausted** his remedies as to: (1) Ground 3(a) (prejudicial evidence re dismissed count); and (2) the portion of Ground 3(b) (ineffectiveness re prejudicial evidence on dismissed count) which relates to appellate counsel.  Moreover, Respondents have asserted no exhaustion defense as to Grounds 1(b), 4(b) (ineffectiveness re failure to present a defense), 4(c) (ineffectiveness re discovery), 4(e) (ineffectiveness re SDO allegation), and 4(f) (ineffectiveness re privacy).  Accordingly, these claims must be addressed on

their merits.

Also based on the foregoing, the undersigned concludes that Petitioner has **procedurally defaulted** on: (1) Ground 2(b) (ineffectiveness re *Brady* claim); (2) the portion of Ground 3(b) (ineffectiveness re prejudicial evidence on dismissed count) which relates to trial counsel; (3) Ground 4(a) (ineffectiveness re plea agreement); (4) Ground 4(d) (ineffectiveness re testimonial objections); and (5) Ground 4(g) (ineffectiveness re appeal on motion in limine).

Finally, based on the foregoing, the undersigned concludes that Petitioner was **procedurally barred** on independent and adequate state grounds from asserting: (1) Ground 1(a) (privacy); and (2) Ground 2(a) (*Brady* claim).

## 5.   **Stay to Exhaust**

Petitioner argues that he has presented a "mixed" petition and is entitled to a stay to exhaust state remedies under *Rhines v. Weber*, 544 U.S. 269 (2005).  (Reply, Doc. 14. at 27, *et seq.*)  In *Rhines,* the Court addressed the availability of a stay to a Petitioner with a petition asserting both exhausted and unexhausted claims, to permit the Petitioner to return to state court to exhaust his unexhausted remedies.  *Rhines* has no application here, however, because Petitioner has not presented a "mixed" petition with unexhausted state remedies, but one in which all of his state remedies are exhausted, albeit some of them "technically exhausted" by procedural default.

> In habeas, state-court remedies are described as having been "exhausted" when they are no longer available, regardless of the reason for their unavailability.  Thus, if state-court remedies are no longer available because the prisoner failed to comply with the deadline for seeking state-court review or for taking an appeal, those remedies are technically exhausted, but exhaustion in this sense does not automatically entitle the habeas petitioner to litigate his or her claims in federal court. Instead, if the petitioner procedurally defaulted those claims, the prisoner generally is barred from asserting those claims in a federal habeas proceeding.

*Woodford v. Ngo*, 548 U.S. 81, 92-93 (2006) (citations omitted).

Because all of Petitioner's claims which were not properly exhausted (or

procedurally barred on independent and adequate state grounds) are now plainly procedurally defaulted under Arizona state law, there is no purpose to be served by staying consideration of the petition.

### 6.   Cause and Prejudice

If the habeas petitioner has procedurally defaulted on a claim, or it has been procedurally barred on independent and adequate state grounds, he may not obtain federal habeas review of that claim absent a showing of "cause and prejudice" sufficient to excuse the default. *Reed v. Ross*, 468 U.S. 1, 11 (1984).

"Cause" is the legitimate excuse for the default. *Thomas v. Lewis*, 945 F.2d 1119, 1123 (1991). "Because of the wide variety of contexts in which a procedural default can occur, the Supreme Court 'has not given the term "cause" precise content.'" *Harmon v. Barton*, 894 F.2d 1268, 1274 (11th Cir. 1990) (quoting Reed, 468 U.S. at 13), *cert. denied*, 498 U.S. 832 (1990).  The Supreme Court has suggested, however, that cause should ordinarily turn on some objective factor external to petitioner, for instance:

> ... a showing that the factual or legal basis for a claim was not reasonably available to counsel, or that "some interference by officials", made compliance impracticable, would constitute cause under this standard.

*Murray v. Carrier*, 477 U.S. 478, 488 (1986) (citations omitted).

Petitioner argues that this Court should find cause to excuse his procedural defaults based on the ineffective assistance of appellate and PCR counsel.

### (a)   Ineffectiveness of Appellate Counsel Can Establish Cause

Ineffective assistance of counsel may constitute cause for failing to properly exhaust claims in state courts and excuse procedural default. *Ortiz v. Stewart*, 149 F.3d 923, 932, (9th Cir. 1998).  However, to meet the "cause" requirement, the ineffective assistance of counsel must amount to an independent constitutional violation.  *Id*. Moreover, "[t]o constitute cause for procedural default of a federal habeas claim, the

constitutional claim of ineffective assistance of counsel must first have been presented to the state courts as an independent claim." *Cockett v. Ray*, 333 F.3d 938, 943 (9th Cir. 2003).   Accordingly, to the extent that Petitioner asserts ineffective assistance of appellate counsel as cause, a failure to exhaust state remedies on that claim of ineffectiveness will preclude relying upon it as cause.

### (b)   Ineffectiveness of PCR Counsel Ordinarily Not Cause

Ordinarily, to meet the "cause" requirement, the ineffective assistance of counsel must amount to an independent constitutional violation. *Ortiz v. Stewart*, 149 F.3d 923, 932, (9th Cir. 1998).  Accordingly, where no constitutional right to an attorney exists, ineffective assistance will not amount to cause excusing the state procedural default.  *Id*. "Ineffective assistance of counsel can constitute cause to excuse a procedural default only if the petitioner had a constitutional right to counsel in the proceeding in which the default occurred….The fact that counsel is appointed by the state court does not change the result, because counsel is not constitutionally required." *Smith v. State of Idaho*, 392 F.3d 350, 357 (9th Cir. 2004) (emphasis in original, citations omitted).  If there is no federal constitutional right to counsel, a petitioner "cannot establish cause because of the state trial court's failure to appoint him counsel, even if such failure was erroneous as a matter of state law." *Smith*, 392 F.3d at 357 .  In *Patrick Poland v. Stewart*, 169 F. 3d 573 (9th Cir. 1999), the Ninth Circuit held that "[b]ecause there is no right to an attorney in state post-conviction proceedings, there cannot be constitutionally ineffective assistance of counsel in such proceedings." *Id*. at 588 (quoting *Coleman v. Thompson*, 501 U.S. 722, 752 (1991)).

Petitioner nonetheless contends that he had a federal constitutional right to effective assistance of PCR counsel, citing *Halbert v. Michigan*, 545 U.S. 605 (2005). (Reply, Doc. 14 at 5, *et seq.*)  However, *Halbert* provides for no such right.

In *Halbert*, the Court observed that Michigan had required that defendants convicted by plea agreement were required to obtain leave from the court of appeals to

file an appeal, and the Michigan Supreme Court had concluded that because the appeal was thus discretionary, there was no federal right to counsel in seeking leave to appeal. The Supreme Court reversed, applying the decision in *Douglas v. California*, 372 U.S. 353 (1963) that in first appeals as of right, States must appoint counsel to represent indigent defendants.  Here, Petitioner had appointed counsel on direct appeal.  It is true that Petitioner was required to bring his claims of ineffective assistance on PCR review. But the Supreme Court has since *Halbert* expressly declined to extend a constitutional right to counsel to such PCR counsel.

Instead, in *Martinez v. Ryan*, 132 S.Ct. 1309 (2012), discussed hereinafter, the Supreme Court noted the longstanding observation in *Coleman v. Thompson*, 501 U.S. 722 (1991) that there *might* be a Constitutional right to counsel in initial-review collateral proceedings which provide the first occasion to raise claims of ineffective assistance.  The *Martinez* Court concluded "[t]his is not the case, however, to resolve whether that exception exists as a constitutional matter." 132 S.Ct. at 1315.  Thus, at least as of *Martinez*, the Court still was declining to find a constitutional right to PCR counsel, even when the PCR proceeding amounted to the only opportunity for review of claims of ineffective assistance.   In essence, then, *Martinez* simply applied the logic of *Halbert* to the unique context of claims of ineffective assistance of counsel which are only assertable in many states on collateral review.  But neither *Halbert* nor *Martinez* extended the right to counsel beyond such initial review proceedings, and *Martinez* expressly declined to extend a constitutional right to counsel in PCR proceedings, even in the context of them being the first opportunity to present ineffective assistance claims. Instead, the Court adopted an exception to its jurisprudence on cause and prejudice.

Petitioner points to no other authority to support his contention that a constitutional right to PCR counsel exists, and the Ninth Circuit has plainly held it does not.  Thus, any showing of cause of ineffective assistance of PCR counsel must be

limited to the exceptions under *Maples* and *Martinez* discussed hereinafter.[3]

Finally, Petitioner correctly argues that 28 U.S.C. § 2254(i) poses no bar to him relying on the ineffectiveness of PCR counsel as cause to excuse his procedural defaults. (Reply, Doc. 14 at 14 *et seq.*)  The Supreme Court specifically held so in *Martinez*. "In short, while § 2254(i) precludes Martinez from relying on the ineffectiveness of his postconviction attorney as a 'ground for relief,' it does not stop Martinez from using it to establish 'cause.'"  *Martinez*, 132 S. Ct. at 1320.

### (c)    Exception for Abandonment without Notice

The Supreme Court has recognized two exceptions to the general rule that ineffectiveness of PCR counsel is not cause.

The first exception was recognized in *Maples v. Thomas*, 132 S.Ct. 912 (2012), where the Supreme Court held that cause could be shown when PCR counsel was not merely negligent (and under the law of agency that negligence being chargeable to the petitioner) but had abandoned the representation without notice to the petitioner, resulting in the loss of his state remedies.

Here, however, Petitioner does not suggest that counsel abandoned the representation without notice, merely that counsel was deficient in not bringing claims Petitioner asserts are meritorious.  Indeed, counsel filed the appropriate notice to the Court when he was unable to find an issue of review. Thus, any such deficiency was not external to the defense, and is chargeable to Petitioner.

### (d)    Exception for Claims re Ineffectiveness of Trial & Appellate Counsel

The second exception to the general rule that ineffectiveness of PCR counsel

---

[3] There is some inherent logic to extending *Martinez* beyond claims of ineffective assistance of counsel to find a right to PCR counsel for pleading defendants for whom post-conviction review is their only form of review, *e.g.* in states like Arizona that deny direct appeal to pleading defendants.  However, Petitioner was not a pleading defendant, and had the benefit of direct appeal.

does not establish cause concerns the failure of PCR counsel to bring claims of ineffective assistance of trial counsel.[4]

In *Martinez v. Ryan,* 132 S.Ct. 1309 (2012), the Court recognized that because courts increasingly reserve review of claims of ineffective assistance of trial counsel to post-conviction relief proceedings, the ineffectiveness of counsel in such PCR proceedings could effectively defeat any review of trial counsel's ineffectiveness. Accordingly, the Court recognized a narrow exception to the Court's ruling in *Coleman, supra,* that the ineffectiveness of PCR counsel cannot provide cause. Arizona, the state at issue in *Martinez*, is just such a state, and accordingly ineffective assistance of PCR counsel can establish cause to excuse a procedural default of a claim of ineffective assistance of trial counsel.

However, the *Martinez* court made clear that the limited exception it was creating for ineffectiveness of PCR counsel as "cause" did not extend outside the initial PCR proceeding.

> The holding in this case does not concern attorney errors in other kinds of proceedings, including appeals from initial-review collateral proceedings, second or successive collateral proceedings, and petitions for discretionary review in a State's appellate courts. It does not extend to attorney errors in any proceeding beyond the first occasion the State allows a prisoner to raise a claim of ineffective assistance at trial, even though that initial-review collateral proceeding may be deficient for other reasons.

*Martinez*, 132 S.Ct. at 1320.

Further, *Martinez* only applies to the important "right to the effective assistance of trial counsel." 132 S.Ct. at 1320. In *Ha Van Nguyen*, 736 F.3d 1287, 1295 (9th Cir. 2013), the Ninth Circuit extended *Martinez* to PCR counsel's ineffectiveness in failing to bring claims of ineffective assistance of appellate counsel. Thus, any failure of PCR

---

[4]  The Ninth Circuit has concluded that an ineffective assistance of PCR counsel claim used to establish cause for a procedural default of a claim for ineffective assistance of trial counsel need not be exhausted itself. *Dickens v. Ryan*, *Dickens v. Ryan*, 740 F.3d 1302, 1322 n. 17 (9th Cir. 2014) ("where *Martinez* applies, there seems to be no requirement that the claim of ineffective assistance of PCR counsel as cause for an ineffective-assistance-of-sentencing-counsel claim be presented to the state courts").

1   counsel to assert any other type of claim is not sufficient to establish cause.

2       For Petitioner to rely upon *Martinez*, Petitioner must "demonstrat[e] two things:

3   (1) 'counsel in the initial-review collateral proceeding, where the claim should have been

4   raised, was ineffective under the standards of *Strickland v. Washington*, 466 U.S. 668,

5   104 S.Ct. 2052, 80 L.Ed.2d 674 (1984),' and (2) 'the underlying ineffective-assistance-

6   of-trial-counsel claim is a substantial one, which is to say that the prisoner must

7   demonstrate that the claim has some merit.'"   *Cook v. Ryan*, 688 F.3d 598, 607 (9th Cir.

8   2012)  (quoting *Martinez*, 132 S.Ct. at 1318).

9       In many instances the two *Martinez* prongs are so intertwined that they will be

10  subsumed into one analysis focused on one or the other prongs, *i.e.* trial counsel's

11  performance or PCR counsel's performance.  There remains, however, a clear distinction

12  between the prongs.  For example, there are gradations of the potential for success, and

13  ultimate effect, of the foregone tactic.  Some underlying claims will be so attractive that

14  trial counsel was clearly ineffective, and thus (barring inability to discover, or other

15  impediments), PCR counsel was clearly ineffective in not raising it.  Others may be so

16  clearly meritless that both trial and PCR counsel were obviously not ineffective in

17  avoiding the claim.  And there may be still others, in the middle ground, that are

18  substantial enough that (while perhaps not guaranteed of success) they require a

19  determination whether PCR counsel had other tactical reasons to raise or not raise  the

20  claim, *i.e.* the availability or absence of other, more attractive, claims, or was otherwise

21  acting reasonably in foregoing the claim.

22      Finally, in evaluating the ineffectiveness of PCR counsel (and as part thereof, the

23  ineffectiveness of trial counsel), this habeas Court is not constrained by the limits on

24  grants of habeas relief in 28 U.S.C. § 2254, *i.e.* unreasonable factual determinations,

25  state court decisions contrary to or unreasonable application of Supreme Court law, etc.

26  *Cf. Martinez*, 132 S.Ct. at 1320 (finding limits on habeas relief for ineffectiveness of

27  PCR counsel not applicable to cause and prejudice determination).

28

(e)     **Standard for Ineffectiveness**

Generally, claims of ineffective assistance of counsel are analyzed pursuant to *Strickland v. Washington*, 466 U.S. 668 (1984).  In order to prevail on such a claim, Petitioner must show:  (1) deficient performance - counsel's representation fell below the objective standard for reasonableness; and (2) prejudice - there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at  687-88.  Although the petitioner must prove both elements, a court may reject his claim upon finding either that counsel's performance was reasonable or that the claimed error was not prejudicial.  *Id.* at 697.

There is a strong presumption counsel's conduct falls within the wide range of reasonable professional assistance and that, under the circumstances, the challenged action might be considered sound trial strategy.   *U.S. v. Quinterro-Barraza*, 78 F.3d 1344, 1348 (9th Cir. 1995), *cert. denied*, 519 U.S. 848 (1996); *U.S. v. Molina*, 934 F.2d 1440, 1447 (9th Cir. 1991).    The court should "presume that the attorneys made reasonable judgments and decline to second guess strategic choices."  *U.S. v. Pregler*, 233 F.3d 1005, 1009 (7th Cir. 2000).

An objective standard applies to proving such deficient performance, and requires a petitioner to demonstrate that counsel's actions were "outside the wide range of professionally competent assistance, and that the deficient performance prejudiced the defense."  *United States v. Houtcens*, 926 F.2d 824, 828 (9th Cir. 1991) (quoting *Strickland*, 466 U.S. at 687-90).    The reasonableness of counsel's actions is judged from counsel's perspective at the time of the alleged error in light of all the circumstances. *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986); *Strickland*, 466 U.S. at 689.

"The law does not require counsel to raise every available nonfrivolous defense.  Counsel also is not required to have a tactical reason—above and beyond a reasonable appraisal of a claim's dismal prospects for success—for recommending that a weak claim be dropped altogether." *Knowles v. Mirzayance*, 556 U.S. 111, 127 (2009) (citations

40

omitted).

Moreover, it is clear that the failure to take futile action can never be deficient performance. *See Rupe v. Wood*, 93 F.3d 1434, 1445 (9th Cir.1996); *Sexton v. Cozner*, 679 F.3d 1150, 1157 (9th Cir. 2012).  "The failure to raise a meritless legal argument does not constitute ineffective assistance of counsel."  *Baumann v. United States*, 692 F.2d 565, 572 (9th Cir. 1982).

### (f)   Application of *Martinez* to Petitioner

As discussed hereinabove, the undersigned has concluded that Petitioner Petitioner has **procedurally defaulted** on: (1) Ground 2(b) (ineffectiveness re *Brady* claim); (2) the portion of Ground 3(b) (ineffectiveness re prejudicial evidence on dismissed count) which relates to trial counsel; (3) Ground 4(a) (ineffectiveness re plea agreement); (4) Ground 4(d) (ineffectiveness re testimonial objections); and (5) Ground 4(g) (ineffectiveness re appeal on motion in limine).  The undersigned has also concluded that Petitioner was **procedurally barred** on independent and adequate state grounds from asserting: (1) Ground 1(a) (privacy); and (2) Ground 2(a) (*Brady* claim). The assertions of cause will be addressed with regard to each of these claims.

### (1)   Ground 1(a) (privacy)

In Ground 1(a) of his Petition, Petitioner argues that the placement of the surveillance cameras at the storage facility was a violation of his privacy rights. (Petition, Doc. 1 at 6.)  Because this Ground does not assert a claim of ineffective assistance of trial or appellate counsel, *Martinez* has no application.  *See Martinez*, 132 S.Ct. at 1320; *Ha Van Nguyen*, 736 F.3d at 1295.

Petitioner argues that his failure to exhaust the claim should be excused because appellate counsel was ineffective for failing to raise the claim.  Petitioner fairly presented his claim of ineffectiveness of appellate counsel with regard to this claim by incorporating in his Petition for Review to the Arizona Court of Appeals his *pro per*

PCR petition in which he complained that appellate counsel had failed to seek review "regarding his privacy interest argument." (Exhibit CCC, PCR Pet. at 23.)  The Arizona Court of Appeals addressed the claim on its merits, concluding that Petitioner failed to show that this claim was stronger than others raised on appeal. (Exhibit HHH, Mem. Dec. 9/4/14 at ¶ 11.)

Respondents now argue that Petitioner had no reasonable expectation of privacy in the hallway of the storage facility.  (Answer, Doc. 10 at 41-44.)   Respondents arguments are persuasive.

The Fourth Amendment protects people from warrantless searches in places where they have a "reasonable expectation of privacy." *United States v. Jones*, 132 S. Ct. 945, 950  (2012) (quoting *Katz v. United States*, 389 U.S. 347, 360 (1967) (Harlan, J. concurring)).  "[C]apacity to claim the protection of the Fourth Amendment depends not upon a property right in the invaded place but upon whether the person who claims the protection of the Amendment has a legitimate expectation of privacy in the invaded place." *Rakas v. Illinois*, 439 U.S. 128, 143 (1978).  "One has a reasonable expectation of privacy if one has an actual, subjective expectation of privacy and if the expectation is one that society is prepared to recognize as reasonable."   *United States v. Nohara*, 3 F.3d 1239, 1241 (9th Cir. 1993).

Petitioner fails to proffer anything to show that he had a *legitimate* or *reasonable* expectation of privacy in the public hallway of the storage facility.

In *Jones*, the defendant had a reasonable expectation of privacy over a friend's apartment, when the defendant "not only had permission to use the apartment of his friend, but also had a key to the apartment with which he admitted himself on the day of the search and kept possessions in the apartment." *Rakas*, 439 U.S. at 149. "Except with respect to his friend, Jones had complete dominion and control over the apartment and could exclude others from it." *Id.*   In contrast, here Petitioner proffers nothing to show that he had exclusive use of the hallway, or a right to exclude others from it, nor even that he kept possessions in the hallway.  Rather, it appears that such hallway was freely

available to any customer or employee of the facility, and Petitioner's use of it was limited to accessing his own storage locker.

These circumstance are akin to that in *Nohara*, where the defendant asserted an expectation of privacy in the hallway of a high security, high rise apartment building. The Ninth Circuit observed the long list of cases finding no reasonable expectation of privacy in common hallways and concluded that "any expectation of privacy Nohara might have had is not one that society recognizes as reasonable." *Nohara*, 3 F.3d at 1241.[5]  Similarly, here it is unreasonable for Petitioner to expect privacy in the common hallway of a commercial storage facility.

Therefore, the undersigned would conclude that Petitioner had no reasonable expectation of privacy impacted by the video surveillance, and thus any claim that appellate counsel might have made would have been without merit.

Nonetheless, even if some merit could be found to the argument, appellate counsel could have made the reasonable tactical determination that the claim was of such limited merit that foregoing it was in Petitioner's best interests.  "The law does not require counsel to raise every available nonfrivolous defense. Counsel also is not required to have a tactical reason—above and beyond a reasonable appraisal of a claim's dismal prospects for success—for recommending that a weak claim be dropped altogether." *Knowles v. Mirzayance*, 556 U.S. 111, 127 (2009) (citations omitted). "In many instances, appellate counsel will fail to raise an issue because she foresees little or no likelihood of success on that issue; indeed, the weeding out of weaker issues is widely recognized as one of the hallmarks of effective appellate advocacy." *Miller v. Keeney*,

---

[5] Respondents rely upon *United States v. Venema*, 563 F.2d 1003 (10th Cir. 1977), which involved the hallway of a storage facility.  There, however, the 10th Circuit relied at least in part upon the information that "[w]hen the defendant initially rented the locker he was advised by the manager …that from time to time she allowed the police on the premises and permitted them to use their dogs for the purpose of detecting marijuana, and that should he store marijuana in his locker, he did so at his own risk." *Id.* at 1006.  Nothing suggests that such a warning was given to Petitioner.  Nonetheless, given the nature of a common hallway in a storage facility, the undersigned finds such warning unnecessary to the conclusion that any subjective expectation of privacy Petitioner might assert was not justified.

882 F.2d 1428, 1434 (9th Cir. 1989).   In light of the limited merits to this claim, appellate counsel was not deficient in failing to raise it.

Accordingly, Petitioner has failed to show that appellate counsel was ineffective for failing to raise his claim in Ground 1(a), and thus fails to establish cause to avoid the effect of the procedural bar applied to this claim.

### (2)   Ground 2(a) (*Brady* claim)

In Ground 2(a), Petitioner argues that the prosecution failed to disclose Officer Edwards as a trial witness, in violation of *Brady v. Maryland*, 373 U.S. 83, 87 (1963), and alleges that appellate counsel failed to present the claim on direct appeal, but he presented this issue in his PCR proceeding.  (Petition, Doc. 1 at 7.)  The undersigned has concluded that this claim was procedurally barred on PCR review.

As with Ground 1(a), because this claim is not one for ineffective assistance of trial or appellate counsel, *Martinez* has no application.

Petitioner asserts appellate counsel was ineffective for failing to present the claim on direct appeal, and that such ineffectiveness provides cause to excuse the procedural bar.   Respondents argue that Petitioner cannot show cause because the underlying claim is without merit because: (1) there was no prejudice from the limited testimony of Officer Edwards; (2) counsel was otherwise aware of Edwards' expected testimony; (3) the claim is essentially one founded upon state procedural rule; (4) *Brady* does not require disclosures of who will testify; (5) the testimony was not exculpatory; and (6) the testimony was not material.  (Answer, Doc. 10 at 52-54.)  Respondents further argue that appellate counsel was not ineffective in failing to bring the claim.  (*Id* at 55.)

In *Brady v. Maryland*, 373 U.S. 83, 87 (1963), the Supreme Court held that a defendant's due process rights are violated when the state fails to disclose to the defendant prior to trial "evidence favorable to an accused…where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87. The prosecution's duty to disclose favorable evidence is

not dependent upon a request from the accused, and even an inadvertent failure to disclose may constitute a violation. *See United States v. Agurs*, 427 U.S. 97, 107, 110 (1976). As the Supreme Court has observed, *Brady* and its progeny "illustrate the special role played by the American prosecutor in the search for truth in criminal trials." *Strickler v. Greene*, 527 U.S. 263, 281 (1999).

The obligation imposed under *Brady* and related cases "extends not only to exculpatory information about the defendant but also to information about witnesses which would undermine the government's case..[but] does not give the defendant the right to know about information which would help solidify the government's case." *United States v. Barker*, 988 F.2d 77, 79 (9th Cir. 1993).

Here, Petitioner fails to show that either the fact that Officer Edwards was to testify, or the substance of his testimony, were exculpatory.  Rather, Petitioner describes Edwards' testimony as "prejudicial to the defense," "important to establish the case in chief," and "essential to the state."  (Petition, Doc. 1 at 7.)  Petitioner's real complaint is that the defense was surprised by the incriminating testimony, and thus unprepared to meet it.  *Brady* does not protect against such surprise.  "It does not follow from the prohibition against concealing evidence favorable to the accused that the prosecution must reveal before trial the names of all witnesses who will testify unfavorably." *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977).

This claim is without merit, and raising it would have been futile, and counsel was not ineffective for filing to do so.  *See Rupe*, 93 F.3d at 1445.

Petitioner thus fails to establish cause to avoid the effect of the procedural bar applied to this claim.


### (3)   Ground 2(b) (ineffectiveness re *Brady* claim)

In his Ground 2(b), Petitioner argues that trial counsel was ineffective for failing to object to Officer Edwards' testimony based on the state's failure to list him in their discovery.  (Petition, Doc. 1 at 7.)

Respondents argue that Petitioner cannot establish ineffectiveness of PCR counsel under *Martinez* with respect to this claim because Petitioner cannot show the objection would have been sustained because trial counsel may have been aware of Edwards, that exclusion was an unlikely remedy, the absence of any deliberateness on the part of the prosecution, and exclusion would not have likely resulted in a different verdict. (Answer, Doc. 10 at 55-56.)

At trial, Edwards testified on direct examination to: his employment with the Scottsdale Police Department (Exhibit FF, R.T. 11/16/09 PM at 45-47); that on January 10, 2008 he responded to a call to Petitioner's residence, and observed hundreds of shoe boxes and a Bentley in the garage (*id.* at 47-49); the inside of the house was unremarkable, and the neighborhood was older, with the one street being redeveloped (*id.* at 49-51); Petitioner reported that he owned or his sister owned Tipps Barbecue, a place unknown to the officer (*id.* at 51-52); and upon leaving, his trainee completed a field information card, and Edwards communicated with Detective Dersa about his experiences at the house (*id.* at 52-53). On cross-examination, Edwards denied recalling the specifics of the communication with Dersa, confirmed Petitioner's description of his employment at his sister's barbeque, denied checking all the shoe boxes for shoes, reported that Petitioner said the shoes were his, that the Bentley was recorded as belonging to someone else in California, Petitioner said the house was his, confirmed he did not inquire about Petitioner's income, but Petitioner did report being involved in real estate. (*Id* at 53-58.) On re-direct, he confirmed his testimony about Petitioner's reporting owning the barbeque and then saying his sister did, testified that he had never seen a Bentley at a residence in that part of town, confirmed that Petitioner claimed to own the shoes, that the house was built in the early to mid 1990s, and Petitioner reported he owned the house. (*Id.* at 58-60.)

Edwards had not been disclosed in the prosecutions' list of trial witnesses. (Exhibit B, State's Disclosure.)

For the reasons discussed hereinabove with respect to Ground 2(a), trial counsel

1   could not have objected to Edwards' testimony under *Brady*.

2   But, trial counsel was not limited to arguing *Brady*. Arizona Rule of Criminal

3   Procedure 15(b)(1) mandates that the prosecution disclose the "names and addresses of

4   all persons whom the prosecutor intends to call as witnesses in the case-in-chief."

5   However, such disclosures need not be reduced to a single list of witnesses, nor even be

6   formally made. *See e.g. State v. Linden*, 136 Ariz. 129, 140, 664 P.2d 673, 684 (App.

7   1983) (letter filed with court listing witness adequate disclosure); and *State v. Roseberry*,

8   210 Ariz. 360, 366, ¶ 25, 111 P.3d 402, 408 (2005) (no error where defendant had actual

9   notice of the aggravating circumstance before trial, despite lack of written notice under

10  Rule 15.1). Petitioner proffers nothing to show that the state had not disclosed Edwards

11  in some manner other than their initial disclosure.

12  Moreover, Petitioner presumes that an objection would have resulted in the trial

13  court precluding Edwards from testifying. To the contrary, preclusion was unlikely.

14  Rule 15.7(a) provides for compelling the required disclosures and sanctions for failure to

15  make disclosures, which include but are not limited to:

16          (1) Precluding or limiting the calling of a witness, use of evidence
            or argument in support of or in opposition to a charge or defense, or
17          (2) Dismissing the case with or without prejudice, or
            (3) Granting a continuance or declaring a mistrial when necessary in
18          the interests of justice, or
            (4) Holding a witness, party, person acting under the direction or
19          control of a party, or counsel in contempt, or
            (5) Imposing costs of continuing the proceedings, or
20          (6) Any other appropriate sanction.

21  Ariz. R. Crim. Proc. 15.7(a). While the Rule appears to make sanctions mandatory, it

22  provides an exception where "the court finds that the failure to comply was harmless or

23  that the information could not have been disclosed earlier even with due diligence and

24  the information was disclosed immediately upon its discovery." *Id.* Moreover, it directs

25  that the sanctions reflect "the significance of the information not timely disclosed, the

26  impact of the sanction on the party and the victim and the stage of the proceedings at

27  which the disclosure is ultimately made." *Id.* Arizona applies a multi-factor analysis to

28  determining whether preclusion is an appropriate remedy: "(1) how vital the witness is

47

to the case, (2) whether the opposing party will be surprised, (3) whether the discovery violation was motivated by bad faith, and (4) any other relevant circumstances." *State v. (Joe. U.) Smith*, 140 Ariz. 355, 359, 681 P.2d 1374, 1378 (1984) (Ariz. Sup. Ct. *en banc*). The Arizona Supreme Court has counseled that preclusion should be a last resort:

> The trial court, however, should seek to apply sanctions that affect the evidence at trial and the merits of the case as little as possible, since the Rules of Criminal Procedure are designed to implement, and not to impede, the fair and speedy determination of cases. Prohibiting the calling of a witness should be invoked only in those cases where other less stringent sanctions are not applicable to effect the ends of justice.

*State v. (Joseph Clarence) Smith (Jr.)*, 123 Ariz. 243, 252, 599 P.2d 199, 208 (1979) (Ariz. Sup. Ct. *en banc*).

Here, there is no indication that Edwards' testimony was vital to the prosecution. That would lean towards exclusion. *See State v. Birdsall*, 23 Ariz. App. 454, 456, 533 P.2d 1191, 1193 (1975) (exclusion of witnesses vital to state's case was too severe).

However, neither is there any evidence that counsel was surprised. As pointed out by Respondents, trial counsel had filed a motion in limine arguing:

> the investigation of Mr. Jones was initiated on a Domestic Violence call that called into question Mr. Jones' finances. Officers observed that Mr. Jones had many expensive items and felt that he may be involved in illegal activities and therefore began an investigation on him.

(Exhibit X, 1st MIL (regarding DV evidence) at 2.) The matter was discussed at the hearing on the motion, and the prosecution made clear that it intended to present testimony containing the evidence presented by Edwards, albeit without naming Edwards. (Exhibit EE, R.T. 11/16/9 at 8-10.) Thus trial counsel was fully aware of the events testified to by Officer Edwards, as well as the existence of Officer Edwards, if perhaps not by name.

Nor is there any suggestion that the prosecution acted in bad faith. Maybe, if Edwards had volunteered some surprisingly new and inculpating evidence, a suggestion of bad faith might appear. But Edwards' testimony reflected what trial counsel had already anticipated.

Moreover, assuming trial counsel was surprised, other less onerous sanctions would appear effective, given the limited nature of Edwards' testimony, including a recess to permit an interview of Edwards. "In any event, it is almost universally held that the violation of a notice-of-witness rule does not automatically disqualify the witness. If the defense is given an opportunity to meet and question the undisclosed witness prior to the proffered testimony, as was done here, it is generally held not to be an abuse of discretion." *State v. LaBarre*, 115 Ariz. 444, 448, n. 2, 565 P.2d 1305, 1309, n. 2 (App. 1977).

Based upon the foregoing, even assuming trial counsel was unaware Edwards would be called (thus establishing a violation of the state's disclosure rule), he could have reasonably concluded that the testimony of Edwards would not have been excluded, and that an objection would not have provided any benefit to Petitioner.

Further, excluding Edwards had little benefit for Petitioner.  Without him, the jury was left with testimony of Detective Dersa that his investigation of Petitioner was started because of "communication from an officer."  (Exhibit GG, R.T. 11/17/2009 at 13.) Moreover, Detective Dersa had already testified that upon service of the search warrant at the residence, the same Bentley and shoeboxes later testified to by Edwards were present.  (Exhibit HH R.T. 11/7/9 PM at 88-91.)

Counsel could have reasonably concluded that allowing the sanitized explanation of the genesis of the investigation from Officer Edwards was less damaging than the ominous description that it was triggered by some unspecified communication from an officer, and thus counsel could have reasonable made the tactical decision to forego the objection.

In sum, Petitioner fails to make allegations sufficient to show that trial counsel performed deficiently by failing to object to the testimony of Edwards.  Accordingly, this claim is not substantial, and PCR counsel was not ineffective for failing to raise it.

Petitioner thus fails to establish cause to excuse his procedural default of his state remedies on this claim.

### (4)   Ground 3(b) (ineffectiveness re prejudicial evidence on dismissed count re trial counsel)

In Ground 3(b), Petitioner argues that both trial and appellate counsel were ineffective for failing to object to the evidence on the dismissed count as being unfairly prejudicial.  (Petition, Doc. 1 at 8.)  The undersigned has concluded hereinabove that the portion of this claim relating to trial counsel was procedurally defaulted.

Although not addressing this claim as a separate claim for relief, Respondents argue with respect to cause and prejudice that Petitioner cannot show appellate counsel was ineffective with regard to this evidence because the evidence was relevant to the un-dismissed counts, and was not unfairly prejudicial, nor was it a violation of due process.  Respondents further argue that Petitioner cannot demonstrate prejudice because of the limited impact of this evidence, and the other evidence of Petitioner's guilt on the un-dismissed counts.  (Answer, Doc. 10 at 58-61.)

On November 9, 2009, Petitioner filed a motion in limine that sought "to preclude the State from introducing evidence of drug sale on January 14, 2008, without the testimony of FBI agents and lab reports confirming results of the drug analysis." (Exhibit X, #3.) At argument, the prosecution responded on the motion by stating: "I have no objection to that, Judge. That refers [to] Count 1, and we don't intend to proceed on that count anymore." (Exhibit EE, at 13.)  After discussing the potential to leave Count 1 pending for trial (to allow admission of the evidence relevant to that claim), the likelihood of an involuntary dismissal at trial on directed verdict, and whether limited evidence of Petitioner's movements on January 14, 2008 would remain relevant to the remaining counts, the prosecution agreed to dismiss Count 1, the defense agreed, and the court dismissed it with prejudice.  (*Id.* at 13-19.)  With regard to the relevance of the evidence to the remaining counts, the parties hinted at raising the objection at the time of the evidence, but the trial court made no ruling on the motion in limine at that time.  (*Id.* at 18.)   At best, the trial court opined: "But it seems to me that it is relevant in a sense that it establishes the locations, it establishes Mr. Jones' whereabouts, [w]hat his familiarity [is]." (*Id.* at 19.)

At trial, Detective Dersa testified that they began surveilling Petitioner on January 14, 2008. (Exhibit GG, R.T. 11/17/9 at 14.) He described observing Petitioner leave his home in Scottsdale, travel in a Range Rover to an office building where he met another person who got in the vehicle with petitioner, and then they separated. Petitioner then went to a condo, where he got into a Mercedes S550 driven by someone else, who drove to Tipps Barbeque. Petitioner went into the restaurant for a short time, returned back to the Mercedes, and went back to the condo. Afterward, he left in the Range Rover, and drove back to Tipps Barbeque, where he got into a white Chevy panel van and drove to the U-Haul storage facility, where Petitioner went in and emerged with a brown cardboard box, returned inside and came out again with a larger box, and then drove back to Tipps Barbeque. Petitioner then drove the Range Rover back to the condo. (*Id.* at 14-25.)

Trial counsel did not oppose this testimony as irrelevant or unfairly prejudicial.

Petitioner fails to explain why, even with Count 1 dismissed, this information was irrelevant or unfairly prejudicial. The evidence plainly tied Petitioner to the storage facility, and demonstrates his transportation of boxes from the location. This was plainly relevant to the charges based upon the drugs found in the storage facility.

Petitioner argued to the state courts that the evidence was a violation of Arizona Rule of Evidence 403. That rule, like its federal counterpart, provides: "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Petitioner argues that the evidence was unfairly prejudicial and misleading to the jury because it related to the FBI investigation of the dismissed count. (*See* Exhibit CCC, *Pro Per* PCR Pet. at 14-15.)

Petitioner fails to explain how that was unfairly prejudicial. "Unfair prejudice results if the evidence has an undue tendency to suggest decision on an improper basis, such as emotion, sympathy, or horror. Not all harmful evidence, however, is unfairly

prejudicial." *State v. Mott*, 187 Ariz. 536, 545-46, 931 P.2d 1046, 1055-56 (1997). Nothing about the testimony concerning January 14 would evoke such a response.

The essence of Petitioner's argument seems to be that the evidence was suggestive of the criminal conduct in the dismissed Count 1. But Petitioner's view is skewed by information not presented to the jury. No mention was made on direct examination of the FBI investigation of the purported drug sale occurring during those events. No reference was made to the dismissed charge, nor even to any drugs being involved in Petitioner's actions that day.

Petitioner makes much of the jury's questions about the events of the day (e.g. what happened to the boxes). Petitioner argues this demonstrates that the evidence was misleading. But those questions were prompted by the fact that no explanation was given on the results of the surveillance (e.g. the results of the FBI investigation), because that evidence had been opposed by trial counsel based on the lack of disclosure of the drug tests. The jury was not misled, but rightly recognized that there was nothing to connect Petitioner's conduct that day directly to any drug transaction occurring on that day.

Petitioner's argument seems to be that, alternatively, this was improper "other act" evidence. Like Federal Rule of Evidence 404, Arizona Rule of Evidence 404(b) generally prohibits the introduction of "other crimes, wrongs or acts" to the extent used to prove the character of the person "to show action in conformity therewith." But, here, the testimony of Petitioner's conduct on January 14, 2008 was not related to Petitioner's character. (It did not even depict any overtly criminal or wrongful conduct.) Rather, it was for other purposes permissible under that rule, "such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

Here, the evidence of events on January 14, 2008 was limited to describing the progression of the investigation from the initial police encounter with Officer Edwards through the arrest. The Arizona Courts have long permitted the prosecution to explain

the background for a police investigation as part of its "completing the story doctrine." Even "[e]vidence of other criminal acts is admissible when so blended or connected with the crime of which defendant is accused that proof of one incidentally involves the other or explains the circumstances of the crime." *State v. Villavicencio*, 95 Ariz. 199, 201, 388 P.2d 245, 246 (1964).   Similarly, the Ninth Circuit allows "other act" evidence "to be admitted when it was necessary to do so in order to permit the prosecutor to offer a coherent and comprehensible story  regarding the commission of the crime; it is obviously necessary in certain cases for the government to explain either the circumstances under which particular evidence was obtained or the events surrounding the commission of the crime." *United States v. Vizcarra-Martinez*, 66 F.3d 1006, 1012-13 (9th Cir. 1995).

In sum, Petitioner fails to show that there was a valid objection to be raised by trial counsel.  "The failure to raise a meritless legal argument does not constitute ineffective assistance of counsel." *Baumann v. United States*, 692 F.2d 565, 572 (9th Cir. 1982).

Because the undersigned finds no valid objection, and thus there was clearly no deficient performance, Respondents arguments regarding a lack of prejudice are not addressed.

Based on the foregoing, the underlying claim of ineffective assistance is not substantial, and PCR counsel's failure to raise the claim cannot provide cause to excuse Petitioner's procedural default on this portion of Ground 3(b).

### (5)     Ground 4(a) (ineffectiveness re plea agreement)

In Ground 4(a), Petitioner argues that in August through November, 2009, appointed trial counsel was ineffective in advising Petitioner that he was negotiating a plea agreement, and that the case would not go to trial.  (Petition, Doc. 1 at 9.)    The undersigned has concluded hereinabove that this claim is procedurally defaulted.

Petitioner argues:

> The trial attorney was appointed August 21, 2009 and requested to withdrawal from representing the Petitioner on September for 1.C1.Claim. The courts denied trial counsel on or in October. On November 5, 2009 the case was set for trial in which as an last ditch effort trial counsel requested an continuance in which was denied. Through this whole process he informed Petitioner that this case was not going to trial and he was negotiating an plea agreement, and had a murder trial that he was focus on.

(*Id.*)

Respondents argue that Petitioner cannot overcome the procedural bar under *Martinez* "because: (i) he clearly anticipated that the case would go to trial, as demonstrated by his refusals to accept the State's plea offers, or even to participate in a *Donald* advisement, and his vocal criticisms of trial counsel for not "believing" in "his case"; and (ii) the fact that the case did not settle does not suggest that trial counsel were ineffective, and Petitioner fails to demonstrate how that was the case." (Answer, Doc. 10 at 68.)

Petitioner addresses the plea bargaining at length in his Reply. (Reply, Doc. 14 at 40, *et seq.*) Most of his argument is directed at arguing that retained counsel, Mr. Simpson, was ineffective during his tenure in advising Petitioner about the proffered pleas. (*Id.* at 40-49.) Petitioner then relates that by the time they had proceeded to trial, Petitioner remained interested in a plea, but because the prosecution would not offer a plea agreement, his only option was to plead to the charges. (*Id.* at 49-55.) Petitioner complains that Mr. Acosta erroneously requested a settlement conference with the trial court after the jury was empaneled, failed to adequately advise him about the consequences of pleading guilty as charged, and to challenge the addition of the Serious Drug Offender allegation and to raise arguments that the indictment sought double punishment. (*Id.* at 55-58.) Petitioner also argues that the trial court committed various errors.

Most of the argument by Petitioner in his Reply with regard to plea bargaining (Doc. 14 at 40-63), is an attempt to raise new claims. Petitioner has not sought leave to amend his Petition to raise new claims. *See* Fed. R. Civ. Proc. 15 (requiring motion to

amend for amendments more than 21 days after answer).    None of his argument addresses his claim regarding misrepresentations regarding the potential for a negotiated plea agreement.

In the unique context of a claim of ineffective assistance of counsel where a plea offer has lapsed or been rejected because of counsel's deficient performance, a defendant can establish ineffective assistance of counsel upon showing the requisite prejudice, "a reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of counsel." *Missouri v. Frye*, 132 S.Ct. 1399, 1409 (2012). But central to such a claim is the loss of a proffered plea.   Here, Petitioner does not suggest, and the record does not reflect, that a plea offer was available in August through November 2009.

Rather, Petitioner's argument is that counsel misrepresented that plea negotiations were ongoing and would be successful.

Assuming *arguendo* that Mr. Acosta made those representations, and assuming *arguendo* that doing so was deficient performance (*e.g.* because there were no plea negotiations and/or no reasonable attorney could have believed they would be successful), Petitioner fails to suggest any prejudice.

Petitioner does go on to argue in Ground 4(b) that counsel failed to present a defense at trial.  But as discussed hereinafter, Petitioner fails to support that claim.

Petitioner also argues with regard to Ground 4(e) that the serious drug offender allegation was filed on August 24, 2009, and that trial counsel was apparently unaware of and did not communicate the allegation until November 5, 2009.   As discussed hereinafter with regard to Ground 4(e), Petitioner fails to show prejudice from delayed notification of the SDO allegation. And, Petitioner fails to suggest how, even coupled with a misrepresentation that trial would be avoided, this would have prejudiced Petitioner.

At best, Petitioner contends simply that trial counsel painted too rosy of a picture about the potential for a negotiated plea.  The Sixth Amendment is not a guarantee of

perfect performance by counsel or a satisfaction guarantee.  It is a protection to insure that the outcome of the proceeding is not worsened for a defendant because his counsel was performing in unreasonable ways.  Petitioner offers nothing to show how the outcome at trial was worse than what it would have been had counsel advised Petitioner that the matter was headed to trial.

Having failed to proffer any prejudice, Petitioner has failed to show that his claim in Ground 4(a) is substantial.  Accordingly, *Martinez* does not apply, and Petitioner cannot avoid the effect of his procedural default of this claim.

### (6)   Ground 4(d) (ineffectiveness re testimonial objections)

In Ground 4(d), Petitioner argues that trial counsel "failed to object to critical testimony that prejudice[d] the entire trial." (Petition, Doc. 1 at 9.)  The undersigned has concluded hereinabove that this claim is procedurally defaulted.

Respondents argue this claim is conclusory, and that even assuming this refers to Detective Dersa's testimony regarding surveillance on January 14, 2008, the claim is not substantial because "Petitioner's activities on January 14, 2008, were clearly relevant with respect to the undismissed counts, and there is no reasonable prospect that the jury would have reached a different result if the January 14 evidence had not been included." (Answer, Doc. 10 at 68-69.)

Petitioner does not address the merits of this claim in his Reply, nor does he clarify it.

To the extent that Petitioner simply attacks the failure to object to Dersa's testimony, this claim is duplicative of the portion of Ground 3(b) regarding trial counsel, which the undersigned has concluded hereinabove is not substantial.

Beyond the Dersa testimony, Petitioner's claim is conclusory.

Conclusory allegations that are not supported by specific facts do not merit habeas relief.  *James v. Borg*, 24 F.3d 20, 26 (9th Cir.), *cert. denied, sub. nom James v. White*, 513 U.S.935 (1994).  Cursory allegations that are purely speculative cannot support a

56

claim of ineffective assistance of counsel.  *Shah v. United States*, 878 F.2d 1156, 1161 (9th Cir.), cert. denied, 493 U.S. 869 (1989).   Thus, a defendant cannot satisfy the *Strickland* standard by "vague and conclusory allegations that some unspecified and speculative testimony might have established his defense."  *Zettlemoyer v. Fulcomer*, 923 F.2d 284, 298 (3d Cir.), *cert. denied*, 502 U.S. 902 (1991).

Accordingly, Ground 4(d) is not substantive within the meaning of *Martinez*, and Petitioner's procedural default of the claim is not excused by PCR counsel's failure to raise it.

### (7)   Ground 4(g) (ineffectiveness re appeal on motion in limine)

In Ground 4(g), Petitioner argues that appellate counsel failed to adequately argue the improper failure to rule on the motion in limine, after stating that the evidence was irrelevant and dismissing the count.  (Petition, Doc. 1 at 9.)   The undersigned has concluded hereinabove that this claim is procedurally defaulted.

Respondents argue this claim is not substantive, and thus not subject to *Martinez*, because the underlying motion in limine was without merit.  (Answer, Doc. 10 at 69.)

Indeed, as discussed hereinabove with regard to Ground 3(b), the undersigned has concluded that the testimony was admissible.   Thus, any insistence by counsel on a ruling on the motion in limine should have resulted in denial of the motion, and thus would have been futile.   Failure to take futile action is not ineffective assistance.  *See Rupe*, 93 F.3d at 1445.

Accordingly, this claim is not substantial under *Martinez*, and Petitioner may not avoid his procedural default of this claim on that basis.

### (g)   Summary re Cause and Prejudice

Based upon the foregoing, the undersigned concludes that Petitioner has failed to establish cause to excuse his procedural defaults.

Both "cause" and "prejudice" must be shown to excuse a procedural default,

although a court need not examine the existence of prejudice if the petitioner fails to establish cause. *Engle v. Isaac*, 456 U.S. 107, 134 n. 43 (1982); *Thomas v. Lewis*, 945 F.2d 1119, 1123 n. 10 (9th Cir.1991).   Petitioner has filed to establish cause for his procedural default.   Accordingly, this Court need not examine the merits of Petitioner's claims or the purported "prejudice" to find an absence of cause and prejudice.

7.    **Actual Innocence**

The standard for "cause and prejudice" is one of discretion intended to be flexible and yielding to exceptional circumstances, to avoid a "miscarriage of justice." *Hughes v. Idaho State Board of Corrections*, 800 F.2d 905, 909 (9th Cir. 1986).   Accordingly, failure to establish cause may be excused "in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496 (1986) (emphasis added).   Although not explicitly limited to actual innocence claims, the Supreme Court has not yet recognized a "miscarriage of justice" exception to exhaustion outside of actual innocence.   *See* Hertz & Lieberman, *Federal Habeas Corpus Pract. & Proc.* §26.4 at 1229, n. 6 (4th ed. 2002 Cumm. Supp.).   The Ninth Circuit has expressly limited it to claims of actual innocence. *Johnson v. Knowles*, 541 F.3d 933, 937 (9th Cir. 2008).

A petitioner asserting his actual innocence of the underlying crime must show "it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence" presented in his habeas petition. *Schlup v. Delo*, 513 U.S. 298, 327 (1995).   A showing that a reasonable doubt exists in the light of the new evidence is not sufficient.   Rather, the petitioner must show that no reasonable juror would have found the defendant guilty. *Id*. at 329.   This standard is referred to as the "*Schlup* gateway." *Gandarela v. Johnson*, 286 F.3d 1080, 1086 (9th Cir. 2002).

Here, Petitioner makes no assertion or showing that no reasonable juror would have found him guilty in light of new evidence.   Accordingly his procedurally defaulted and procedurally barred claims must be dismissed with prejudice.

**B.**   **STANDARDS OF REVIEW ON HABEAS**

The remainder of Petitioner's claims must be addressed on the merits.

**Standard Applicable on Habeas** - While the purpose of a federal habeas proceeding is to search for violations of federal law, in the context of a prisoner "in custody pursuant to the judgment a State court," 28 U.S.C. § 2254(d) and (e), not every error justifies relief.

**Errors of Law** - "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [the law] incorrectly." *Woodford v. Visciotti*, 537 U. S. 19, 24– 25 (2002) (per curiam).  To justify habeas relief, a state court's decision must be "contrary to, or an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" before relief may be granted.  28 U.S.C. §2254(d)(1).

**Errors of Fact** -  Federal courts are further authorized to grant habeas relief in cases where the state-court decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  "Or, to put it conversely, a federal court may not second-guess a state court's fact-finding process unless, after review of the state-court record, it determines that the state court was not merely wrong, but actually unreasonable."  *Taylor v. Maddox*, 366 F.3d 992, 999 (9th Cir. 2004).

Moreover, a state prisoner is not free to attempt to retry his case in the federal courts by presenting new evidence.   There is a well-established presumption of correctness of state court findings of fact.  This presumption has been codified at 28 U.S.C. § 2254(e)(1), which states that "a determination of a factual issue made by a State court shall be presumed to be correct" and the petitioner has the burden of proof to rebut the presumption by "clear and convincing evidence."

**Applicable Decisions** – In evaluating state court decisions, the federal habeas court looks through summary opinions to the last reasoned decision.  *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004).

**No Decision on the Merits** – The limitations of 28 U.S.C. § 2254(d) only apply where a claim has been "adjudicated on the merits in State court."   Thus, where a petitioner has raised a federal claim to the state courts, but they have not addressed it on its merits, then the federal habeas court must address the claim *de novo*, and the restrictive standards of review in § 2254(d) do not apply.  *Johnson v. Williams*, 133 S.Ct. 1088, 1091-92 (2013).  *See id.* (adopting a rebuttable presumption that a federal claim rejected by a state court without being expressly addressed was adjudicated on the merits).

## C.    MERITS OF GROUND 1(B) (*FRANKS* & SEARCH WARRANT)

As discerned by Respondents, in Ground 1(b), Petitioner argues that the trial court failed to grant an evidentiary hearing on Petitioner's claim that the affidavits presented to obtain the search warrants contained false information.   (Answer, Doc. 10 at 33.) Petitioner references the failure to grant an evidentiary hearing, but does not make explicit any assertion that it was wrongful, or why.  (Petition, Doc. 1 at 6.)

Respondents argue the claim is barred by *Stone v. Powell*, 428 U.S. 465 (1976). (Answer, Doc. 10 at 40.)   Respondents further argue that the claim is without merit because the Arizona Court of Appeals properly rejected it on the merits on the basis that Petitioner failed to show that the search warrant affidavit contained a false statement, or that outstanding discovery would have entitled him to an evidentiary hearing.  (Answer, Doc. 10 at 44 (citing Exhibit XX, Mem. Dec. 12/15/11 at ¶¶ 27-32.)   For the same reasons, Respondents argue that the denial of an evidentiary hearing did not preclude Petitioner's opportunity for full and fair litigation of the claim, as required for application of the *Stone* doctrine.

***Franks* Hearings** – In *Franks v. Delaware*, 438 U.S. 154 (1978), despite the presumption of validity attaching to affidavits in support of search warrants, the Supreme Court extended the Fourth Amendment exclusionary rule to search warrants shown to have been issued based on "deliberate misstatements, and those of reckless disregard" of

the truth.   *Id.* at 170.  After evaluating the need to preserve the solemnity of the warrant

issuing process and judicial determinations, and other policy considerations, the Court

concluded that evidentiary hearings to challenge search warrant affidavits should not

lightly be granted.

> To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient. The deliberate falsity or reckless disregard whose impeachment is permitted today is only that of the affiant, not of any nongovernmental informant. Finally, if these requirements are met, and if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required.

*Id.* at 171-72.

In applying *Franks*, the court engages in a two step process.

> First, the district court determines whether the affiant officer intentionally or recklessly made false or misleading statements or omissions in support of the warrant. If it finds by a preponderance of the evidence that the officer so acted, the district court then inquires into whether "with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause."

*United States v. Martinez-Garcia*, 397 F.3d 1205, 1215 (9th Cir. 2005).

**_Stone_ Doctrine** – Notwithstanding *Franks*, such Fourth Amendment exclusionary

rule claims are generally not cognizable on habeas review.

"Exclusion is 'not a personal constitutional right,' nor is it designed to 'redress

the injury' occasioned by an unconstitutional search. The rule's sole purpose, we have

repeatedly held, is to deter future Fourth Amendment violations." *Davis v. U.S.*, 564

U.S. 229, 131 S. Ct. 2419, 2426 (2011). Thus, in *Stone v. Powell*, 428 U.S. 465 (1976),

the Supreme Court recognized that habeas proceedings are so far removed from the

offending conduct that any deterrent effect is outweighed by the societal cost of ignoring

reliable, trustworthy evidence and the judicial burden of litigating collateral issues. Thus, the Court held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted habeas corpus relief on the ground that the evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Id.* at 494. *See Balistreri v. Ryan,* 2009 WL 4673931, at *14 (D. Ariz. Dec. 3, 2009) (Cambell, D.J. accepting report and recommendation of Anderson, M.J.) (applying *Stone* to *Franks* claim).

It is irrelevant whether the petitioner actually successfully availed himself of the opportunity for a state court hearing, so long as he had the opportunity to do so. *Gordon v. Duran*, 895 F.2d 610, 613 (9th Cir. 1990). Nor is it relevant whether the decision rendered was correct. "Moreover, Siripongs' argument goes not to the fullness and fairness of his opportunity to litigate the claim, but to the correctness of the state court resolution, an issue which *Stone v. Powell* makes irrelevant." *Siripongs v. Calderon*, 35 F.3d 1308, 1321 (9th Cir. 1994), *as amended on denial of reh'g and reh'g en banc* (Oct. 13, 1994).

**Factual Background** – Petitioner's Petition and Reply fail to identify the nature of false or misleading statements in the warrant application. In his Motion to Suppress based on *Franks*, Petitioner argued that the falsehood made in obtaining the warrant to search his home and storage locker was that the FBI and Scottsdale Police Department had observed drugs in the two boxes handled by Petitioner on January 14, 2008. (Exhibit J, Mot Supp. at 4.) Petitioner provided no evidence in support of the assertion that the information was false, but simply added a footnote: "Jones will seek to supplement the factual the [sic] support for this contention following examination of additional discovery that he has requested from the state." (*Id.* at n. 2.) In his Reply in support of the Motion to Suppress, Petitioner reported:

> In his motion, Jones noted that he would supplement the factual basis for this assertion after and [sic] examination of additional discovery. That discovery has been requested and is the subject of a separate motion to produce. However, the available reports do not support the avowal in the warrant application.

(*Id.* at 2-3.)

The Arizona Court of Appeals summarized the resolution of the motion as follows:

> At a trial management conference on May 4, 2009, the parties discussed the motion, and defense counsel informed the court that he had made a discovery request for "DEA 6' s and 302's" so that he could file a supplemental brief on the suppression issue if necessary. The prosecutor could not confirm that the requested discovery existed, but qualified that it possibly could, and vowed to get and disclose it if it existed. Defense counsel never filed a supplement to his motion to suppress.
>
> On June 8, 2009, the trial court vacated the June 12, 2009 suppression hearing and denied the motion to suppress. Defendant never attempted to supplement his original motion to suppress nor asked the trial court to reconsider its decision.

(Exhibit XX, Mem. Dec. 12/15/11 at 11.)

**State Court Decision** - The Arizona Court of Appeals denied Petitioner's appeal based on the motion to suppress, quoting *Franks* and concluding:

> Defendant failed to make anything other than an unsubstantiated and conclusory attack on the validity of the affidavit for the search warrant. Defendant never alleged, let alone made any showing, substantial or otherwise, that the "suspect" false assertion that he questioned in the affidavit was the result of any deliberate falsehood or of reckless disregard for the truth. Defendant failed to satisfy the threshold prerequisite of an allegation and therefore was not entitled to a determination on the issue of probable cause.

(*Id.* at 16-17.)   The court also rejected Petitioner's arguments that discovery was still ongoing when the trial court ruled by noting that Petitioner did not seek reconsideration based on later obtained discovery, and Petitioner still failed to proffer any support for the allegations of falsehood.  (*Id.* at 17-18.)

**Application of Law to Facts** – Petitioner's claim in Ground 1(b) is barred by *Stone*.  Petitioner proffers nothing to show that he was denied an opportunity for a full and fair hearing on this claim in the state courts.

Petitioner points to the denial of an evidentiary hearing, but Petitioner fails to show that he had adequately supported his request for such a hearing under *Franks*. Thus, Petitioner has failed to show that he lacked the opportunity for a full and fair hearing, merely that he failed to properly take advantage of the opportunity.

1     Even if not barred by *Stone*, Petitioner still fails to proffer anything other than

2   naked suspicions that the search warrant contained falsehoods, that the falsehood was

3   intentional or reckless, or that the remaining allegation of the affidavit would not be

4   sufficient to support the search warrant.  That is not sufficient to warrant an evidentiary

5   hearing under *Franks*, nor to establish that the fruit of the warrant was excludable.

6     Even if this Court could somehow find some validity to Petitioner's *Franks* claim,

7   Petitioner fails to point to any unreasonable determination of the facts in the decision of

8   the Arizona Court of Appeals, or to show that the decision was contrary to or an

9   unreasonable application of Supreme Court law.

10     Accordingly, this claim is without merit, and must be denied.

11

12  **D.    MERITS OF GROUND 3(A) (EVIDENCE ON DISMISSED COUNT)**

13     In Ground 3(a), Petitioner argues that his due process rights were violated when

14  unfairly prejudicial other act evidence regarding the dismissed Count 1 (relating to the

15  alleged sale of marijuana on January 14, 2008) was admitted.  (Petition, Doc. 1 at 8.)

16  The undersigned has concluded that this claim is exhausted, but has not been addressed

17  by the state court on the merits.

18     For the reasons addressed hereinabove in disposing of the Petitioner's *Martinez*

19  argument on the related claim of ineffective assistance of counsel, the undersigned

20  concludes that the evidence admitted regarding the January 14, 2008 dismissed count

21  was not irrelevant to the remaining counts or unfairly prejudicial.  (*See supra* Section

22  III(A)(6)(f)(4).)

23     Accordingly, this ground must be denied on the merits.

24

25  **E.    MERITS OF GROUND 3(B) (IAC RE DISMISSED COUNT EVIDENCE)**

26     In Ground 3(b), Petitioner argues that both trial and appellate counsel were

27  ineffective for failing to object to the evidence on the dismissed count as being unfairly

28  prejudicial.  (Petition, Doc. 1 at 8.)  The undersigned has concluded hereinabove that the

portion of this claim relating to trial counsel was procedurally defaulted, but the portion related to appellate counsel was properly exhausted.

Although not addressing this claim as a separate claim for relief, Respondents argue with respect to cause and prejudice that Petitioner cannot show appellate counsel was ineffective with regard to this evidence because the evidence was relevant to the un-dismissed counts, and not unfairly prejudicial, nor was it a violation of due process. Respondents further argue that Petitioner cannot demonstrate prejudice because of the limited impact of this evidence, and the other evidence of Petitioner's guilt on the un-dismissed counts.  (Answer, Doc. 10 at 58-61.)

In addressing Petitioner's allegations of cause and prejudice under *Martinez* arising from the portion of Ground 3(b) related to trial counsel, the undersigned has concluded that Petitioner has failed to show a valid objection to the limited evidence presented regarding the dismissed count.  (*See supra* Section III(A)(6)(f)(4).)

Similarly, Petitioner fails to show that there was a valid objection to be raised on direct appeal by appellate counsel.  "The failure to raise a meritless legal argument does not constitute ineffective assistance of counsel."  *Baumann v. United States*, 692 F.2d 565, 572 (9th Cir. 1982).

Accordingly, this claim is without merit, and must be denied.

## F.    MERITS OF GROUND 4(B) (IAC RE DEFENSE) AND  GROUND 4(c) (IAC RE DISCOVERY)

**Parties Arguments** - In his Ground 4(b), Petitioner argues that trial counsel failed to prepare for trial or present a defense.  In his Ground 4(c) he argues trial counsel failed to pursue available discovery. (Petition, Doc. 1 at 9.)

Respondents argue that ground 4(b) is conclusory because Petitioner "does not state what defense counsel should have presented, what witnesses might have been called, and how they would have saved the day."  (Answer, Doc. 10 at 70.)  Respondents further argue that the mere fact that no defense witnesses were presented creates no

presumption of ineffectiveness, particularly in light of the overwhelming evidence against and admissions by Petitioner.  (*Id.* at 70-71.)

Respondents similarly argue that Ground 4(c) is conclusory because Petitioner does not identify the omitted discovery or suggest how it would have made a difference in the case.  (*Id.* at 71-72.)

Petitioner does not address the merits of these claims in his Reply.

**New Allegations** - Petitioner does raise a number of new allegations in his Reply of defenses trial counsel should have raised, e.g. a claim of double jeopardy, the legal insufficiency of the Serious Drug Offender Allegation, and to oppose a non-unanimity verdict.  (Reply, Doc. 14 at 37, *et seq.*)  However, Petitioner points to no place where he raised these potential defenses to the Arizona Court of Appeals.

Although a federal habeas petitioner may reformulate somewhat the claims made in state court, *Tamapua v. Shimoda*, 796 F.2d 261, 262 (9th Cir. 1986*), rev'd in part on other grounds by Duncan v. Henry*, 513 U.S. 364 1995), the substance of the federal claim must have been "fairly presented" in state court.  *Anderson v. Harless*, 459 U.S. 4, 6 (1982)(*per curiam*); *Picard v. Connor*, 404 U.S. 270, 278 (1971); *Tamapua*, 796 F.2d at 262.  Thus, a petitioner may not broaden the scope of a constitutional claim in the federal courts by asserting additional operative facts that have not yet been fairly presented to the state courts.  Expanded claims not presented in the highest state court are not considered in a federal habeas petition.  *Brown v. Easter*, 68 F.3d 1209 (9th Cir. 1995); *see also, Pappageorge v. Sumner*, 688 F.2d 1294 (9th Cir. 1982), *cert. denied*, 459 U.S. 1219 (1983).  Thus, while new factual allegations do not ordinarily render a claim unexhausted, a petitioner may not "fundamentally alter the legal claim already considered by the state courts." *Vasquez v. Hillery*, 474 U.S. 254, 260 (1986). *See also Chacon v. Wood*, 36 F.3d 1459, 1468 (9th Cir.1994).

By now asserting a laundry list of potential defenses never before presented in connection with Petitioner's claims of ineffective assistance, Petitioner is attempting to fundamentally alter the claims in Ground 4(b) and 4(c) from what was presented to the

state courts.  Indeed, as discussed hereinafter, the state court rejected these claims largely because Petitioner had provided no such potential defenses or claims.

Nor did Petitioner identify these potential defenses in his Petition, nor seek leave to amend his Petition to include them.  "The district court need not consider arguments raised for the first time in a reply brief."  *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007).

Accordingly, the undersigned does not consider these allegations a part of Petitioner's grounds for relief, and does not address them herein.

**State Court Decision** – The Arizona Court of Appeals did not address the summary claim now asserted by Petitioner, but rejected Petitioner's claims as to specific defenses.

With regard to the failure to call character witnesses, the court rejected the claim because "Jones does not specify who should have been called as a character witness in his defense or what those witnesses would have testified to."  The court also concluded that Petitioner failed to show that the decision not to present such witnesses was not a tactical one.  (Exhibit HHH, Mem. Dec. 9/4/14 at ¶ 5.)

With regard to uninvestigated financial records, the court found Petitioner failed to specify the records or how they were beneficial.  (*Id.* at ¶ 6.)

With regard to the failure to conduct discovery, be informed, and prepare for cross-examination, , the court found that Petitioner offered no specifics, and cited the trial court's finding that "defense counsel was prepared for trial, filed pre-trial motions, cross-examined the State's witnesses, and advocated strongly on behalf of the Defendant."  (*Id.* at ¶ 7.)

**Application of Law** - Indeed, a defendant may not leave a court to speculate at what additional preparation, investigation or discovery may have yielded.

A failure to investigate a meritorious defense may constitute ineffective assistance of counsel.  *See Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *Morris v. California*, 966 F.2d 448 (9th Cir. 1991), *cert. denied*, 113 S. Ct. 96 (1992).  However, a habeas petitioner

may not leave a court to speculate what evidence the deficient investigation would have discovered.   In order to prevail on an allegation that defense counsel conducted an insufficient investigation resulting in ineffective assistance, the petitioner must show specifically what that investigation would have produced.  For example, a petitioner may not simply speculate about what a witness' testimony, but must adduce evidence to show what it would have been.   *Grisby v. Blodgett*, 130 F.3d 365, 373 (9th Cir. 1997). "[E]vidence about the testimony of a putative witness must generally be presented in the form of actual testimony by the witness or on affidavit. A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim."   *U.S. v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991).

Moreover, while complete failure to defend a criminal case is ineffective assistance, the constitution does not require counsel to manufacture a defense where none exists.  *See U.S. v. Hamilton*, 792 F.2d 837 (9th Cir. 1986).  "The sixth amendment does not require counsel to invent a defense." *Haynes v. Cain*, 272 F.3d 757, 764 (5th Cir. 2001), *rehr'g granted on other grounds*, 284 F.3d 604 (5th Cir. 2002).

> In many cases, the law and facts will be so overwhelmingly in favor of the government that defense counsel can do little more than try to poke holes in the government's case in cross-examination. The hopelessness of some cases may even relegate the most competent defense counsel to the role of official hand-holder. The Sixth Amendment does not hold an attorney responsible for the difficulty of the case he inherits. The choice to pursue a bad strategy makes no comment on an attorney's judgment where no better choice exists.

*Hendricks v. Calderon*, 70 F.3d 1032, 1042 (9th Cir. 1995).

Here, the state courts found that trial counsel was prepared for trial, filed pre-trial motions, cross-examined the State's witnesses, and advocated strongly on behalf of Petitioner.   Petitioner proffers nothing to suggest that this was an unreasonable determination of the facts.  The undersigned finds that it fairly summarizes the efforts by trial counsel.

Based upon the foregoing, Petitioner's claims in Grounds 4(b) and 4(c) are without merit and must be denied.

## G.        MERITS OF GROUND 4(E) (IAC RE SDO ALLEGATION)

**Parties Arguments** - In Ground 4(e), Petitioner argues that trial counsel was ineffective because he failed for over two months to alert Petitioner to the filing of the serious drug offender allegation.  (Petition, Doc. 1 at 9.)

Respondents argue that Petitioner fails to offer evidence of when he was advised of the allegation, fails to establish prejudice to an available plea offer, and fails to show a likelihood he would have accepted such offer, in light of his prior refusal offers when even without the SDO allegations an effective life sentence was possible.  (Answer, Doc. 10 at 72-73.)

Petitioner does not address the merits of this claim in his Reply.

**Factual Background** – The state filed its Notice of Serious Drug Offender on August 27, 2009 (Exhibit S).   At trial, Petitioner complained to the trial court that counsel had not alerted him to the SDO allegation until November 3.  (Exhibit FF, R.T. 11/16/9 PM at 7.)

**State Court Decision** – The Arizona Court of Appeals rejected this claim, finding:

> He does not, however, support the allegation with reasonable evidence demonstrating that, but for this error, the outcome would have been different. Jones does not say whether a plea agreement was offered to him following the State's filing of the allegation, the terms of any offered plea agreement, if one existed, or that, in light of the serious drug offender allegation, he would have agreed to a plea agreement if one was offered.

(Exhibit HHH, Mem. Dec. 9/4/14 at ¶ 9 (citations omitted).)

**Application of Law to Facts** – Assuming *arguendo* that Petitioner was not advised by counsel of the SDO allegation for over two months, and assuming *arguendo* that it was deficient performance for trial counsel to fail to alert him, Petitioner still fails to identify any prejudice.   The only speculative prejudice might have been to the rejection of a plea offer.  But the last plea offer had expired long before the SDO was filed.

Thus Petitioner fails to show a reasonable probability that, but for counsel's

purported unprofessional errors, the result of the proceeding would have been different. *Strickland,* 466 U.S. at 687-88. Although the petitioner must prove both elements, a court may reject his claim upon finding either that counsel's performance was reasonable or that the claimed error was not prejudicial. *Id.* at 697.

Even if this Court could somehow find some validity to Petitioner's claim, Petitioner fails to point to any unreasonable determination of the facts in the decision of the Arizona Court of Appeals, or to show that the decision was contrary to or an unreasonable application of Supreme Court law.

Accordingly, this claim is without merit and must be denied.

## H.   MERITS OF GROUND 4(F) (IAC RE PRIVACY CLAIM)

**Parties Arguments** - In Ground 4(f), Petitioner argues appellate counsel failed to challenge the privacy interest violation. (Petition, Doc. 1 at 9.)

Respondents point to their arguments on Ground 1(a), and argue that the underlying privacy claim is without merit, and that given the deference due to appellate counsel in selecting claims, this claim of ineffective assistance is without merit. (Answer, Doc. 10 at 74.)

**State Court Decision** – The Arizona Court of Appeals addressed this claim on the merits in Petitioner's PCR proceeding. The court rejected the argument based on Petitioner's failure to show prejudice from failure to raise the claim, and because appellate counsel is not ineffective for choosing among issues for appeal. (Exhibit HHH, Mem. Dec. 9/4/14 at ¶ 11.)

**Application of Law** – The substance of the underlying claim and the merits of the claim of ineffective assistance of appellate counsel are addressed hereinabove in disposing of Petitioner's attempts to rely upon the ineffectiveness raised in this claim, to avoid his procedural default on the underlying claim. (*See supra* Section III(A)(6)(f)(1).) For the reasons expressed hereinabove, the undersigned concludes that this claim is without merit.

Even if this Court could somehow find some validity to Petitioner's claim, Petitioner fails to point to any unreasonable determination of the facts in the decision of the Arizona Court of Appeals, or to show that the decision was contrary to or an unreasonable application of Supreme Court law.

Accordingly, Ground 4(f) must be denied.

## I.   SUMMARY

Petitioner has **procedurally defaulted** on: (1) Ground 2(b) (ineffectiveness re *Brady* claim); (2) the portion of Ground 3(b) (ineffectiveness re prejudicial evidence on dismissed count) which relates to trial counsel; (3) Ground 4(a) (ineffectiveness re plea agreement); (4) Ground 4(d) (ineffectiveness re testimonial objections); and (5) Ground 4(g) (ineffectiveness re appeal on motion in limine). Petitioner was **procedurally barred** on independent and adequate state grounds from asserting: (1) Ground 1(a) (privacy); and (2) Ground 2(a) (*Brady* claim).  Petitioner has failed to show cause and prejudice or actual innocence to avoid the effects of his procedural defaults and procedural bars. Accordingly, these claims must be dismissed with prejudice.

Petitioner has failed to establish the merits of:  (1) Grounds 1(b) (*Franks* claim); (2) Ground 3(a) (prejudicial evidence re dismissed count); (3) the portion of Ground 3(b) (ineffectiveness re prejudicial evidence on dismissed count) which relates to appellate counsel; (4) Ground 4(b) (ineffectiveness re failure to present a defense); (5) Ground 4(c) (ineffectiveness re discovery); (6) Ground 4(e) (ineffectiveness re SDO allegation); and (7) Ground 4(f) (ineffectiveness re privacy).  Accordingly, these claims must be denied.

## IV.   CERTIFICATE OF APPEALABILITY

**Ruling Required** - Rule 11(a), Rules Governing Section 2254 Cases, requires that in habeas cases the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  Such certificates are required in

71

cases concerning detention arising "out of process issued by a State court", or in a proceeding under 28 U.S.C. § 2255 attacking a federal criminal judgment or sentence. 28 U.S.C. § 2253(c)(1).

Here, the Petition is brought pursuant to 28 U.S.C. § 2254, and challenges detention pursuant to a State court judgment.  The recommendations if accepted will result in Petitioner's Petition being resolved adversely to Petitioner.  Accordingly, a decision on a certificate of appealability is required.

**Applicable Standards** - The standard for issuing a certificate of appealability ("COA") is whether the applicant has "made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

**Standard Not Met** - Assuming the recommendations herein are followed in the district court's judgment, that decision will be in part on procedural grounds, and in part on the merits. Under the reasoning set forth herein, jurists of reason would not find it debatable whether the district court was correct in its procedural ruling, and jurists of reason would not find the district court's assessment of the constitutional claims debatable or wrong.

Accordingly, to the extent that the Court adopts this Report & Recommendation as to the Petition, a certificate of appealability should be denied.

## V.    RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that the following portions of Petitioner's Petition for Writ of Habeas Corpus, filed May 18, 2015 (Doc. 1) be **DISMISSED WITH PREJUDICE**:  (1) Ground 1(a) (privacy); (2) Ground 2(a) (*Brady* claim); (3) Ground 2(b) (ineffectiveness re *Brady* claim); (4) the portion of Ground 3(b) (ineffectiveness re evidence on dismissed count) which relates to trial counsel; (5) Ground 4(a) (ineffectiveness re plea agreement); (6) Ground 4(d) (ineffectiveness re testimonial objections); and (7) Ground 4(g) (ineffectiveness re appeal on motion in limine).

**IT IS FURTHER RECOMMENDED** that remainder of Petitioner's Petition for Writ of Habeas Corpus, filed May 18, 2015 (Doc. 1) be **DENIED**, including:   (1) Grounds 1(b) (*Franks* claim); (2) Ground 3(a) (prejudicial evidence re dismissed count); (3) the portion of Ground 3(b) (ineffectiveness re prejudicial evidence on dismissed count) which relates to appellate counsel; (4) Ground 4(b) (ineffectiveness re failure to present a defense); (5) Ground 4(c) (ineffectiveness re discovery); (6) Ground 4(e) (ineffectiveness re SDO allegation); and (7) Ground 4(f) (ineffectiveness re privacy).

**IT IS FURTHER RECOMMENDED** that, to the extent the foregoing findings and recommendations are adopted in the District Court's order, a Certificate of Appealability be **DENIED**.


## VI.    EFFECT OF RECOMMENDATION

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals.  Any notice of appeal pursuant to *Rule 4(a)(1), Federal Rules of Appellate Procedure*, should not be filed until entry of the district court's judgment.

However, pursuant to *Rule 72(b), Federal Rules of Civil Procedure,* the parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the Court.  *See also* Rule 8(b), Rules Governing Section 2254 Proceedings. Thereafter, the parties have fourteen (14) days

within which to file a response to the objections.  Failure to timely file objections to any findings or recommendations of the Magistrate Judge will be considered a waiver of a party's right to *de novo* consideration of the issues,  *see United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003)(*en banc*),  and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the recommendation of the Magistrate Judge, *Robbins v. Carey*, 481 F.3d 1143, 1146-47 (9th Cir. 2007).

Dated: March 17, 2016

15-0883r RR 16 02 29 on HC.docx

_____
James F. Metcalf
United States Magistrate Judge

74